**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 1842, AFL–CIO, Plaintiff-Appellant,**

v.

**CINCINNATI ELECTRONICS CORPORATION, Defendant-Appellee.**

No. 86–3122.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1986.

Decided Jan. 12, 1987.

Jerry A. Spicer (argued), Peter J. Rakay, Dayton, Ohio, for plaintiff-appellant.

Stephen S. Eberly (argued), Rebecca Hanner White, Cincinnati, Ohio, for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff-Appellant International Brotherhood of Electrical Workers, Local Union No. 1842 (the Union) brought this action against defendant-appellee Cincinnati Electronics Corporation (the Company) under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to va-

cate and/or modify an arbitration award. The Union appeals from the judgment of the district court granting, on cross-motions for summary judgment, the Company's motion for summary judgment and enforcing the arbitration award. The Union maintains, in short, that we should reverse the district court and vacate and/or modify the arbitration award because the award does not draw its essence from the collective bargaining agreement (the Agreement) between the parties as required by the *Steelworkers Trilogy*.[1] We conclude that the district court did not err and therefore affirm.

The Company is a government contractor engaged in the defense electronics industry. The Union is the exclusive collective bargaining representative for all hourly rated production personnel employed by the Company.

Article IV, Section 3 of the Agreement provides that salaried engineering personnel may not perform work "normally or traditionally" performed by bargaining unit employees. The Agreement also provides a multi-tiered mechanism for handling grievances that requires both the Company and the Union to act within specified periods of time at each step of the grievance procedure. The Company's failure to abide strictly by those time requirements triggers a forfeiture provision that states, in pertinent part:

> [I]f the Company fails to present a timely answer in accordance with the provisions of Step 2 or Step 3 of Section 3 of this Article, *the grievance shall be deemed to have been granted.*

Article V, Section 7 of the Agreement (emphasis added).

This dispute arises from the Company's decision to assign all the construction work on a satellite communications device, the PSC–3, to salaried engineering personnel rather than to production bargaining unit employees. The Union lodged a grievance concerning that decision, stating "[t]he union protests salaried employees preforming [sic] production bargaining unit work on the AN/PSC–3 contract."[2] The Union requested as relief: "(1) The AN/PSC–3 work be placed on the production floor immediately [and] (2) All monies due and owing." The parties could not settle the grievance, so the grievance proceeded to arbitration as provided by Article VI of the Agreement.

After an extensive hearing and the submission of post-hearing briefs, the arbitrator determined, *inter alia,* that the Company had failed to comply with the Agreement's time requirements for processing grievances. Consequently, the arbitrator held that the Agreement's forfeiture provision applied, requiring him to deem the Union's grievance granted. The arbitrator further held, however, that the Union "still has the burden of establishing the relief to which it is entitled under the grievance. It is entitled only to the relief proximately resulting from the contractual violation claimed." *Local Union No. 1842, International Brotherhood of Electrical Workers v. Cincinnati Electronics Corp.,* Gr. No. 83–42, at 16 (Nov. 7, 1984) (Volz, Arb.). The arbitrator then ruled that the grievance on its face was ambiguous in that it does not assert which work is bargaining unit work under the AN/PSC–3 contract; and the grievance relied, in this respect, only on the provision in the Agreement reserving to bargaining unit employees work "normally or traditionally" performed by such employees. Therefore, ruled the arbitrator, it was necessary to consider the evidence and determine which work performed under the AN/PSC–3 contract was work "normally or traditionally" done by

---

1. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2. In support of the grievance, the Union relied on Article IV, Section 3 of the Agreement, which, as noted above, provides that only bargaining unit employees may perform work "normally or traditionally" performed by bargaining unit employees.

bargaining unit employees. The arbitrator distinguished this case from others where there was a forfeiture under a similar forfeiture provision but where the "precise relief to which the grievant is entitled is shown on the face of the grievance."[3] *Electrical Workers v. Cincinnati Electronics Corp.*, Gr. No. 83–42, at 17.

The arbitrator ultimately concluded that none of the PSC–3 work was of the kind "normally or traditionally" performed by bargaining unit employees. Therefore, the arbitrator held that the Union was not entitled to any relief via forfeiture based on the Company's alleged violation of the Agreement. Nevertheless, relying on the broad remedial powers conferred on arbitrators by *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the arbitrator awarded the Union approximately $3000 "to deter temptation to default in responses to grievances instead of complying with negotiated time limitations." *Electrical Workers v. Cincinnati Electronics Corp.*, Gr. No. 83–42, at 22.

On review, the district court upheld the arbitrator's decision on the ground that it draws its essence from the Agreement as required by the *Steelworkers Trilogy.*

■ The parties essentially agree on the applicable law. The seminal case is, of course, *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which establishes that a reviewing court must substantially defer to the arbitrator's interpretation of the collective bargaining agreement:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business over-

ruling him because their interpretation of the contract is different from his.

*Id.* at 599, 80 S.Ct. at 1362. Such deference is particularly appropriate when the arbitrator's choice of a remedy is disputed:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.* There the need is for flexibility in meeting a wide variety of situations. The draftsmen [of the collective bargaining agreement] may never have thought of what specific remedy should be awarded to meet a particular contingency.

*Id.* at 597, 80 S.Ct. at 1361 (emphasis added). Nevertheless, an arbitrator's discretion to interpret the collective bargaining agreement is not untrammeled:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet *his award is legitimate only so long as it draws its essence from the collective bargaining agreement.* When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* (emphasis added). Thus, an arbitrator may construe ambiguous contractual language, but lacks authority to disregard or modify plain or unambiguous contractual provisions:

> "[A] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." An arbitrator is permitted to construe any provision of the contract which is ambiguous or unclear in context. But

3. *Pick-N-Pay Super Markets, Inc.*, 69–1 Lab.Arb. Awards (CCH) ¶ 8398 (1969) (Cooley, Arb.) (acceptance of union's last settlement offer requested); *Ball Bros. Co.*, 68–1 Lab.Arb.Awards (CCH) ¶ 8298 (1967) (Stouffer, Arb.) (holiday bonus requested); *The Wooster Plant of Fyr-Fyter Co.*,

67–1 Lab.Arb.Awards (CCH) ¶ 8351 (1967) (Dworkin, Arb.) (reinstatement and back pay requested); *Bowmer Instrument Corp.*, 63–2 Lab.Arb.Awards (CCH) ¶ 8463 (1963) (Dworkin, Arb.) (removal of disciplinary warning requested).

the corollary is also true; an arbitrator is bound by the plain and unambiguous provisions of an agreement.

*Ford Motor Co. v. Plant Protection Association National,* 770 F.2d 69, 74 (6th Cir. 1985), *quoting W.R. Grace & Co. v. International Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). *See, e.g., Sears, Roebuck & Co., Local Union No. 245 v. Teamsters,* 683 F.2d 154, 155–56 (6th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983); *Storer Broadcasting Co. v. American Federation of Television & Radio Artists,* 600 F.2d 45, 47 (6th Cir.1979); *Detroit Coil Co. v. International Association of Machinists and Aerospace Workers,* 594 F.2d 575, 579 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). In other words, an arbitration award that implicitly alters plain or unambiguous contractual language does not draw its essence from the collective bargaining agreement and thus may not be judicially enforced.[4]

The Union argues that the forfeiture provision clearly and unambiguously requires the arbitrator to award the Union whatever relief the grievance requests. Hence, if the charge of contract violation or request for relief is unclear, the forfeiture provision requires the arbitrator, upon a default, to ascertain exactly what the Union meant to charge or to request, but does not permit the arbitrator to determine, as the Union contends was done here, what relief the Union would have actually won on the merits. In other words, according to the Union, the forfeiture provision allows the arbitrator to resolve the ambiguities only by examining the Union's intent in filing the grievance, not by exploring the evidence to determine the extent to which the Agree-

ment has been violated and the relief to which the Union would have been ultimately entitled had the Company complied with the Agreement's time requirements. Holding otherwise, in the Union's view, would completely defeat the forfeiture provision's punitive purpose and effectively construe it out of existence. The Union concludes, therefore, that the arbitrator disregarded a plain contractual provision and must be overruled.

The Company, on the other hand, concedes that, in the usual situation where a grievance charges a contract violation and requests relief with reasonable clarity, the forfeiture provision clearly precludes investigation of the evidence as was done here.[5] The Company maintains, however, that the forfeiture provision is at least ambiguous as to its proper application in a situation where, as here, the grievance and its request for relief are themselves ambiguous. In such a situation, the forfeiture provision may be plausibly interpreted to allow the arbitrator to "grant" a grievance and then resolve such ambiguity by exploring the evidence to determine the extent of the Company's violation of the Agreement and the relief to which the Union is entitled. In other words, in the Company's view, it is arguable that the forfeiture provision authorizes the arbitrator to rule that the Union wins, then ask the question "Wins what?", and then answer that question by determining the extent of the breach and the consequent relief to which the Union is entitled. The Company concludes, therefore, that the arbitrator was within his authority so to construe and apply the forfeiture provision to the operative facts.

We agree that the grievance was ambiguous both as to the breach of the Agreement charged and the relief sought. It

---

4. The Agreement itself, in Article VI, Section 3, implements the *Steelworkers Trilogy* standard by providing that the arbitrator shall have "no power or authority to change, amend, modify, add to, delete from, or otherwise alter this Agreement."

5. Such situations appear in *City of Cedar Rapids, Iowa,* 81 Lab.Arb. (BNA) 149 (1983) (Rob-

erts, Arb.) (bumping rights and back pay requested); *In re Abex Corp.,* 75 Lab.Arb. (BNA) 137 (1980) (Feldman, Arb.) (reinstatement requested); *Shattuck Chemical Co.,* 69 Lab.Arb. (BNA) 912 (1977) (Culley, Arb.) (reinstatement and back pay requested); *Anaconda Aluminum Co.,* 63 Lab.Arb. (BNA) 542 (1974) (Allen, Arb.) (overtime pay requested). *See supra* note 3.

does not state which of the AN/PSC–3 work had improperly been taken from the bargaining unit employees and simply refers to the Agreement to define such work which, in turn, defines such work as that which is "normally or traditionally" bargaining unit work. Moreover, the relief requested ("(1) The AN/PSC–3 work be placed on the production floor immediately (2) All monies due and owing.") was likewise ambiguous in that it does not state which of such work should be placed on the production floor; and, as the Union has conceded, it was not claiming for the bargaining unit employees all of the AN/PSC–3 work. More specifically, the Union claimed at the hearing only "stuffing and assembly" work after development of the first article; yet at the time the grievance was filed, April 22, 1983, the first article had not been completed. The first article was not completed, according to the Union, until December, 1983. Therefore, even under the Union's view, at the time the grievance was filed, there had been no breach of the Agreement and no "monies were due and owing."

■ We cannot agree with the Union that, upon a default, the arbitrator's only inquiry, in resolving ambiguities in the charge and in the relief sought, should have been to determine what the Union had in mind in alleging that the Agreement had been violated and in claiming that AN/PSC–3 work should be placed on the production floor. While the forfeiture clause could be so construed, it is also true that the interpretation and application of the forfeiture clause by the arbitrator in this context is plausible and therefore draws its essence from this contractual provision. We believe that this conclusion is clear if we test the Union's position by assuming an even more ambiguous charge of contract violation and request for relief. Suppose, for example, that the charge had been simply that the Company had violated the Agreement and that the request for relief was to require the Company to cure the breach of the Agreement and to pay money. Certainly, upon a default by the Company, and if the arbitrator determined

to examine the evidence to ascertain the nature and extent of the breach, it could not be said that such an interpretation of the forfeiture provision did not draw its essence from the Agreement. It is not true, as the Union contends, that this interpretation of the forfeiture provision renders it meaningless and ineffective; if the grievance had been clear, the forfeiture clause would have been both meaningful and effective.

Accordingly, we conclude that the district court did not err in denying the Union's motion for summary judgment and in granting the Company's motion.

The judgment of the district court is, therefore, AFFIRMED.