NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0552n.06
Filed: August 2, 2006

No. 05-6647

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HARTCO FLOORING CO., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED PAPERWORKERS OF AMERICA, | ) | EASTERN DISTRICT OF TENNESSEE |
| LOCAL 14597, and UNITED | ) | |
| STEELWORKERS OF AMERICA, AFL- | ) | |
| CIO-CLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: GILMAN and SUTTON, Circuit Judges; HOOD, District Judge.[*]

SUTTON, Circuit Judge.  Hartco Flooring Company challenges a district court decision

upholding an arbitration award in favor of the United Paperworkers of America, Local 14597 and

the United Steelworkers of America (collectively, "the union").  Because the arbitrator based its

decision on a plausible interpretation of the collective bargaining agreement and the work and safety

rules promulgated by Hartco under that agreement, we affirm.

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of
Michigan, sitting by designation.

No. 05-6647
*Hartco Flooring Co. v. United Paperworkers, Local 14597*

I.

Hartco Flooring employed John Blevins and Gary Reagan in its factory in Oneida, Tennessee. Blevins drove a forklift; Reagan operated a foam machine. Hartco's shop floor, at least on September 23, 2002, was not big enough for the two of them. That day, when Blevins moved a pallet stacked with wood-filled boxes with his forklift, he bumped Reagan, almost knocking him to the floor. Neither Blevins nor Reagan immediately reported the incident, and no injuries resulted from it.

The next day, September 24, someone alerted Hartco to the incident. Hartco immediately suspended Blevins and on October 3, 2002, terminated him for "several violations related to Company Policy 10-7 (Forklift Operations[)]." Arb. Op. at 4. The union filed a grievance on Blevins' behalf that eventually reached arbitration. In accordance with the collective bargaining agreement, the parties mutually selected Dr. Stephen D. Owens, a professor of management and business at Western Carolina University, to arbitrate their dispute.

During the arbitration, it became clear that three documents had a bearing on this dispute: the parties' collective bargaining agreement, Hartco's work rules and Hartco's forklift safety policy. The collective bargaining agreement gave Hartco the right "to discipline or discharge employees for just cause," although it did not define the term "just cause." JA 12. Under the agreement, Hartco also retained "the unlimited right to promulgate, revise or modify safety and work rules governing order and discipline at its operations," rules that became effective if the union did not challenge them

within five days. *Id*. The parties agreed that they would arbitrate any grievances they could not resolve privately and that they would recognize "[t]he award of the arbitrator" as "final and binding." JA 24.

Consistent with the collective bargaining agreement, Hartco promulgated work rules and the union did not object to them. One of the rules said that "[e]mployees shall follow all safety rules and instructions at all times." JA 64. "Violation of these rules," the company warned, "**shall** result in immediate **discharge** without prior warning." *Id*. Notwithstanding this admonition, the next page of the document said that "[e]mployees, who violate . . . safety policies, will be disciplined pursuant to the provisions of these policies." JA 65.

Consistent with the collective bargaining agreement and with the work rules, Hartco promulgated a forklift safety policy. *See* JA 85 ("The purpose of this Policy is to ensure forklift trucks are operated in a safe manner by properly trained employees."). The policy, among other things, threatened discipline for "[d]riving a forklift too fast or in a reckless manner" or failing "to immediately report any accident to [a] supervisor." JA 89. Unlike the disciplinary provisions of the work rules, which seem to mandate discharge for violations, the disciplinary provisions of the safety policy say that violations "of forklift safety rules . . . *could* be ruled serious and result in immediate discharge." JA 88 (emphasis added).

On June 13, 2004, the arbitrator sustained Blevins' grievance and awarded him his job, backpay and credit for seniority, less a retroactive 30-day suspension effective September 24, 2002.

"An essential element of just cause," the arbitrator observed, is that "the discipline imposed must be proportionate to the proven infraction." Arb. Op. at 9. Although the arbitrator found that Blevins "did commit a safety violation for which discipline [was] warranted," *id*. at 8, he concluded that "the discharge of John Blevins was not commensurate with the proven safety infraction," *id*. at 10. Blevins, the arbitrator noted, had incurred just one disciplinary action in almost 24 years of work, and despite Hartco's position that it must "close[ly] adhere[]" to the "work rules," "it chose not to address Reagan's failure to immediately report the incident," which itself represented a violation of the same policy Blevins violated. *Id*. at 9.

On September 21, 2005, the district court upheld the arbitrator's decision. The court noted that each of the three relevant documents seemed to provide a different termination standard, undercutting Hartco's position that the documents unambiguously required discharge for Blevins' offense. What was more, Hartco's conduct "contradicted" its proffered interpretation; it had not discharged "Blevins for an earlier safety infraction," nor had it discharged Reagan for "his safety violation (failure to immediately report an accident to a supervisor), which occurred during the incident giving rise to th[e] case." D. Ct. Op. at 11. The court ultimately held that "Dr. Owens's construction of the term 'just cause,' and the consequent conclusions he reached[,] [were] rational." *Id*. at 12.

II.

Although we review the district court's summary-judgment decision de novo, *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004), our review of the underlying arbitration award invokes "one of the narrowest standards of judicial review in all of American jurisprudence," *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999) (internal quotation marks omitted). So long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks omitted).

Put another way, an award must only "draw[] its essence from the collective bargaining agreement." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotation marks omitted). An award does not "draw its essence" from the collective bargaining agreement, we have said, if "(1) [it] conflicts with express terms of the collective bargaining agreement; (2) [it] imposes additional requirements that are not expressly provided in the agreement; (3) [it] is without rational support or cannot be rationally derived from the terms of the agreement; and (4) [it] is based on general considerations of fairness and equity instead of the precise terms of the agreement." *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986) (citations omitted). An award that crosses any of these lines, we have held, must be vacated. *See Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 929 n.3 (6th Cir. 2000).

In arguing that this award did not "draw its essence" from the collective bargaining agreement, Hartco contends that the arbitrator "refused to apply the bargained-for and mandated penalty of discharge for violation of a safety rule." Hartco Br. at 1. That is not how we see it.

As the parties agreed, the issue for the arbitrator was "whether the Grievant was terminated for just cause," and if not, "what should the remedy be?" JA 42 (Hartco Arbitration Br.). The arbitrator reviewed the testimony and found that Blevins "did commit a safety violation for which discipline is warranted." Arb. Op. at 8. The arbitrator then looked to the pertinent language of the agreement: "In Article 2 of the parties' Labor Agreement, it is stated, in part, that management has the right to discipline and discharge for just cause." *Id*. To give content to the undefined term "just cause," he consulted accepted publications in the arbitration field (*e.g.*, *Discipline and Discharge in Arbitration* 85–89 (Norman Brand ed., BNA Books 1998)) and determined that the term "just cause" requires "that the level of discipline be reasonably related to the proven infraction." Arb. Op. at 8. He observed that discharge is "the harshest [form of discipline] for the industrial setting." *Id*. He then looked to several factors that suggested, in his estimation, that discharge was too harsh a punishment in this case, including Blevins' strong work record (a single disciplinary action in nearly 24 years of work) and Hartco's uneven enforcement of the safety rules (Reagan violated the safety policies himself but apparently was not disciplined). "Based on a close examination of the record and the presence of the mitigating and extenuating factors described above," he concluded that "the discharge of John Blevins was not commensurate with the proven safety infraction and demonstrates an abuse of managerial discretion." *Id*. at 9–10.

We have no authority to second guess this interpretation unless "the contract at hand is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement as he did." *Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104, 1108 (6th Cir. 1993) (internal quotation marks omitted); *see Gen. Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 435 (6th Cir. 1999) (holding that a district court "did not have the authority to vacate [an] arbitration award simply because it disagreed with the arbitrator on the question of whether [certain] behavior constituted 'just cause' for . . . termination"). Hartco does not contend that the arbitrator misread the "just cause" provisions of the collective bargaining agreement. It instead claims that the work rules by themselves resolve this dispute. As it reads the work rules, they modify the collective bargaining agreement so that the arbitrator no longer has authority to evaluate whether Blevins' termination was "just"; he has authority only to determine whether a safety violation occurred, in which case discharge is "mandated."

This interpretation, however, exalts the general work rules at the expense of the specific forklift safety policy. The work rules, it is true, stress that "[v]iolation of these rules **shall** result in immediate **discharge** without prior warning." JA 64. And one of those work rules says that "[e]mployees shall follow all safety rules and instructions at all times." *Id*. But the work rules do not stop there; they mention "other work rules" and alternative disciplinary regimes. JA 65. They then say that "[e]mployees, who violate the Drug and Alcohol Policy, the Sexual Harassment Policy or the safety policies, will be disciplined pursuant to the provisions of these policies." *Id*. As to the safety policy that Blevins violated (and was terminated under), it states that violations "of forklift

safety rules . . . *could* be ruled serious and result in immediate discharge." JA 88 (emphasis added). What the work rules appear to make mandatory, then, the safety policy appears to make permissive.

Read together, however, the work rules and the safety policy most naturally support the view that discharge was *not* mandated for Blevins' offense, given the interpretive rule that the specific usually trumps the general. But the critical point is not how this ambiguity should be resolved but that it exists. In the face of this ambiguity, Hartco cannot establish that "the contract at hand is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement as he did." *Bruce Hardwood Floors*, 8 F.3d at 1108. The arbitrator plausibly could determine that the safety policy's permissive language governed, and that the relevant documents, when read together, did not mandate discharge for Blevins' offense. *See id.* ("Whether the arbitrator's reading of the agreement was strained or even seriously flawed, and whether the district court's *per se* just cause analysis is more plausible, is irrelevant. The arbitrator arguably construed and applied the agreement, and this is precisely what the parties bargained for him to do.") (citation omitted); *see Dallas & Mavis Forwarding Co., Inc. v. Gen. Drivers, Local No. 89*, 972 F.2d 129, 135 (6th Cir. 1992) ("[A] court is not authorized to reject [an arbitrator's] plausible interpretation."); *Int'l Bhd. of Elec. Workers, Local No. 1842 v. Cincinnati Elecs. Corp.*, 808 F.2d 1201, 1205 (6th Cir. 1987) ("[T]he interpretation and application of the forfeiture clause by the arbitrator in this context is plausible and therefore draws its essence from this contractual provision.").

Hartco's prior application of these provisions supports this conclusion. Blevins' coworker, Reagan, also violated a safety policy—one requiring that he "immediately report any accident to [a]

supervisor," JA 89—and Hartco "chose not to address" Reagan's violation, Arb. Op. at 9. And although Blevins had committed "a safety-related offense . . . 19 months prior to the discharge," *id.*, Hartco "did not discharge Mr. Blevins for [that] infraction," D. Ct. Op. at 11. Hartco's arbitration position—that the issue to be decided was "whether the Grievant was terminated for just cause," JA 42—further undermines its federal-court position that once the arbitrator "factually determined that the Grievant committed a violation," it had "*per se* 'just cause'" to discharge him, Hartco Br. at 11–12. If the factual finding were the only bone of contention, why not frame the issue as whether Blevins committed a safety violation? In essence, Hartco submitted a single question to the arbitrator and now complains that he lacked the authority to answer it.

Nor does it make a difference that the arbitrator did not explicitly discuss "the potential ambiguity [between the work rules and safety policy] as grounds for his award." *Id.* at 14. Unless the collective bargaining agreement provides otherwise, "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Hartco has not pointed to anything in the collective bargaining agreement requiring the arbitrator to address the issues in any specific depth or with any specific length. *See Green v. Ameritech Corp.*, 200 F.3d 967, 976 (6th Cir. 2000) ("If parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required."). Plainly, the safety policy was in front of the arbitrator as a relevant document because Hartco itself, in both its arbitration brief and its testimony, relied on it as a basis for Blevins' dismissal. *See* JA 43 (Hartco Arbitration Br.) ("[T]he parties stipulated to Joint Exhibit

7, which is the Forklift Operations Policy No. 10-7."); Arb. Op. at 4 ("[Blevins' supervisor testified that he] terminated the Grievant for his 'reckless' operation of the forklift.") (citing Company Policy 10-7).

III.

For these reasons, we affirm.