**Esther JAVETZ, Plaintiff,**

v.

**BOARD OF CONTROL, GRAND VALLEY STATE UNIVERSITY, Allen TenEyck, Anthony Travis, and Rodney Mulder, Defendants.**

No. 4:94–CV–67.

United States District Court, W.D. Michigan, Southern Division.

Aug. 21, 1995.

Order Denying Motion to Alter or Amend Judgment Oct. 31, 1995.

Ross E. Chapman, Deming, Hughey, Chapman & Richardson, Kalamazoo, MI, for Plaintiff.

Pamela Chapman Enslen, Miller Canfield Paddock & Stone, Kalamazoo, MI, for Defendants.

## OPINION OF THE COURT

McKEAGUE, District Judge.

Plaintiff Esther Javetz was employed as a non-tenured assistant professor of education technology at Grand Valley State University from August 1987 to May 1994. In the spring of 1993, she was considered for tenure and tenure was denied. Plaintiff commenced this action in May 1994. In her second amended complaint, she seeks injunctive and compensatory relief, alleging defendants discriminated against her because of her national origin, religion and sex and deprived her of property without due process. Now before the Court is defendants' motion for summary judgment.

I

Plaintiff came to the United States from Israel in 1980. She is Jewish. She obtained her doctorate in instructional design and

technology at Ohio State University in September 1987. She accepted appointment as assistant professor of education and entered into a two-year probationary contract with defendant Grand Valley State University ("Grand Valley") in May 1987. Starting annual salary was $26,000. Prior to completion of the two-year contract, plaintiff was advised by defendant Anthony Travis, Dean of the Social Sciences Division, that her contract would be renewed for one year. He advised that her contract was not renewed for the customary two-year period because of "serious questions" about teaching evaluations by students and peers. Travis also recommended plaintiff expand her research base in preparation for tenure consideration in 1993.

In April 1989, plaintiff received notice from Travis that her contract would be renewed also for the 1990–91 academic year, but that the Social Services Personnel Committee remained dissatisfied with the improvement of her teaching performance. He further specifically advised plaintiff that she was "not on track for a positive evaluation for tenure."

In April 1990, Travis again advised plaintiff that her contract would be renewed for the year 1991–92, but he cautioned that she needed to make continued improvement in teaching performance and research efforts.

In April 1991, Travis departed from the personnel committee recommendation to renew plaintiff's contract for only one year; he awarded a two-year renewal, commending her for improvement in her teaching performance, but again expressing concern about her research productivity.

Plaintiff was considered for tenure in 1993. The School of Education Personnel Committee reached a vote of two in favor of awarding tenure, two opposed, with one abstention. The School of Education Faculty Council then reached a vote of six in favor, eight opposed, with two abstentions. A memorandum reflecting these results was forwarded to the Social Sciences Division Personnel Committee, which unanimously recommended that tenure be denied. Travis adopted the recommendation and advised plaintiff of the decision in a letter dated April 26, 1993. Plaintiff was advised that she had not improved her teaching ability enough to meet Grand Valley's standard for excellence in teaching.

In a letter dated August 9, 1993, in response to plaintiff's request for reconsideration, Travis further explained the rationale for his decision. First, he observed that plaintiff had not submitted compelling evidence that would move him to overrule the recommendations of both the School of Education and the Social Sciences Division Personnel Committees. The personnel committees had found her teaching performance erratic and substandard and her improvement marginal, and he had no reason to disagree. Further, Travis responded at length to plaintiff's charge that the evaluation process was tainted by cultural bias:

I have given careful consideration to your thoughts on this subject. I have also re-read the university's many published statements about the centrality of the student in the learning environment. Grand Valley State University prides itself on its focus on student needs.

In the hiring process, in the orientation period and in the evaluation process for tenure, deans, unit heads, and senior faculty make it clear to faculty members that students and their needs are at the center of all our endeavors. For example, professors are not only to require students to meet high standards but also to teach in a manner that enhances their self esteem, confidence, and their desire to engage in life long learning.

Although a wide variety of teaching practices are encouraged, any teaching method that alienates students from the learning process will not be tolerated. From the evidence that I have reviewed your teaching does just that. We have had faculty members from any number of cultural backgrounds that have understood Grand Valley's role and mission in this regard and have become excellent teachers.

Your teaching style as recounted by your colleagues, students, and even your own statements, including for example your comments on why you find the student evaluation forms unacceptable, does not fit the university's definition of teaching ex-

cellence. Your failure to accept Grand Valley State University's well-published definition of teaching excellence makes me very pessimistic that you would ever be able to meet the expectations of your colleagues, your students, and your dean.

Plaintiff grieved the denial of tenure. Ultimately, the grievance subcommittee, by a vote of three-to-one, concluded that plaintiff should be given a two-year contract renewal with a final decision on tenure to be made after two years. The recommendation was based on the majority finding that teaching performance requirements and expectations had not been clearly communicated. The majority noted specifically that tenure was denied because of unsatisfactory teaching performance even though Travis had, in the last official communication prior to tenure consideration, commended plaintiff on her teaching improvement as of April 1991, and there was no manifest decline in her performance in the meantime. The majority finding concludes: "We question whether Dr. Javetz is an exemplary teacher in a School of Education that teaches teaching; however, it was also difficult to ascertain what that unit and division truly considered to be good teaching."

The Social Sciences Division Personnel Committee considered the grievance subcommittee recommendation and rejected it, observing that it had been fully cognizant of the concerns raised by the majority finding when it originally determined to recommend denial of tenure. Travis, in turn, consistent with the personnel committee action, reaffirmed his original decision not to recommend tenure. The Grand Valley State University Board of Control later adopted this recommendation and plaintiff's employment ended after a one-year terminal contract.

Plaintiff's complaint contains five counts. Named as defendants are the Grand Valley Board of Control, Anthony Travis, Allan Ten-Eyck, Dean of the School of Education, and Rodney Mulder, Chairperson of the Social Services Division Personnel Committee. In count I plaintiff alleges under Title VII, 42 U.S.C. § 2000e–5, and under 42 U.S.C. § 1981, that defendants unlawfully discriminated against her based on her national ori-

gin, her religion and/or her sex in the decision to deny her tenure, in the salary she was paid, in the provision of resources and professional and promotional support for her teaching, and in the refusal to grant her the customary two-year contract renewals. In counts II and III, she alleges under 42 U.S.C. § 1983, that defendants' decision to deny her tenure constituted a deprivation of property without procedural due process and substantive due process, respectively. In count IV, she alleges under 42 U.S.C. § 1983, that the decision to deny her tenure constituted a denial of equal protection. Count V contains a claim under the Equal Pay Act, 29 U.S.C. § 206(d), alleging she was paid less because of her sex.

In their motion for summary judgment, defendants challenge all five claims and contend they are entitled to judgment as a matter of law.

## II

■ Defendants' motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed. R.Civ.P. 56(c). See generally *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). That is, the Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the

nonmovant must present affirmative evidence tending to show a genuine dispute of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. at 1355.

■ The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Id.,* at 323–24, 106 S.Ct. at 2553. The rule thus allows the Court, in furtherance of the policy of "securing the just, speedy and inexpensive determination" of civil actions, Fed. R.Civ.P. 1, to conduct a sort of trial on the paper record, see *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480–81 (6th Cir.1989), and to exercise some discretion in determining whether a claim or defense is plausible. *Barnhart, supra,* 12 F.3d at 1389.

1. Further, to the extent plaintiff's count I claim is brought under 42 U.S.C. § 1981, defendants correctly argue it should be dismissed for lack of allegation or evidence of race discrimination. Plaintiff, by her silence, implicitly concedes this point as well.

2. The notion that plaintiff has a property interest in, or legitimate claim of entitlement to tenure is suspect. See *Edinger v. Bd. of Regents of Morehead State University,* 906 F.2d 1136, 1140 (6th Cir.1990); *Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir.1992). Plaintiff has not responded to defendants' challenge in this respect by arguing the facts that may have given rise to a property interest under state contract law.

Yet even assuming such facts exist, the proposition that a property interest emanating from state law is entitled to substantive due process

## III

In response to defendants' motion, plaintiff expressly concedes that her claims are properly subject to dismissal in the following particulars. First, she acknowledges the count I claim under Title VII is maintainable only against her employer Grand Valley and assents to dismissal of the claim against the individual defendants. Second, plaintiff acknowledges there is no genuine issue of material fact concerning her count II procedural due process claim and that it may be dismissed in its entirety. Third, plaintiff acknowledges that Grand Valley is an arm or instrumentality of the State of Michigan and that the Eleventh Amendment bars suit against it under 42 U.S.C. § 1983. Accordingly, plaintiff assents to dismissal of her counts III and IV claims against Grand Valley, but not against the individual defendants.[1]

What is left are essentially discrimination claims. Plaintiff's substantive due process claim is only facially different. Under substantive due process analysis, assuming plaintiff has a liberty or property interest in continued employment or obtaining tenure at Grand Valley, she is constitutionally protected from arbitrary or capricious state action. See *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *Bd. of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 91, 98 S.Ct. 948, 955, 55 L.Ed.2d 124 (1978).[2] Plaintiff contends defendants acted arbitrarily and capriciously by discriminating

protection is also questionable. See *Charles v. Baesler,* 910 F.2d 1349, 1353–56 (6th Cir.1990); *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1111 (6th Cir.1995); *Thomson v. Scheid,* 977 F.2d 1017, 1020 (6th Cir.1992); *Thomas v. Gee,* 850 F.Supp. 665, 674–75 (S.D.Ohio 1994). Again, plaintiff has not argued the facts or law on this point.

Plaintiff's non-response to this part of defendants' motion warrants award of summary judgment to defendants on the substantive due process claim, to the extent it is premised on a property interest. Fed.R.Civ.P. 56(e). The claim may, however, be legitimately based on plaintiff's liberty interest in not being terminated from public employment for a constitutionally impermissible purpose, such as discrimination based on national origin, religion or sex. See *Gutzwiller v. Fenik,* 860 F.2d 1317, 1328–29 (6th Cir.1988); *Thomas v. Gee, supra,* 850 F.Supp. at 676–77.

against her because of her national origin, religion or sex. Hence, the factual basis for the substantive due process claim is identical to the factual basis for the Title VII and equal protection claims and the legal analysis which the Court must employ is the same. See *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325, 1328–29 (6th Cir.1988) (in certain situations, the protections afforded by equal protection and substantive due process overlap; same showing of intentional discrimination is required to recover under both Title VII and § 1983 equal protection claims); *Boutros v. Canton Regional Transit Authority,* 997 F.2d 198, 202–03 (6th Cir.1993) (§ 1983 and Title VII are largely parallel remedies in employment discrimination suits).

# IV

Critical to plaintiff's discrimination claims is the presentation of circumstantial evidence giving rise to an inference of unlawful discrimination. Plaintiff concedes there is no direct evidence of discriminatory animus.

Plaintiff's circumstantial evidence is evaluated through a tripartite burden-allocation scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citations omitted).

 The elements of plaintiff's prima facie case are established by proof:

(1) that plaintiff is a member of the protected group;

(2) that plaintiff was a candidate for tenure and was qualified under the college or university's standards, practices or customs;

(3) that despite these qualifications plaintiff was rejected; and

(4) that tenured positions in the relevant department remained open at the time plaintiff was denied tenure, in that others were granted tenure in the department during the same general time period.

*Villanueva v. Wellesley College,* 930 F.2d 124, 128 (1st Cir.1991). These elements change in minor respects, of course, when considering plaintiff's claims of discriminatory treatment in contract renewals and compensation.

With respect to all of the discrimination claims, the Court is persuaded that plaintiff has satisfied the prima facie case requirements. Defendants contend plaintiff has failed to satisfy the second element by showing that she was "qualified" for tenure, the claimed two-year contract renewals, and higher compensation. The evidence adduced is clearly sufficient, however, to at least create questions of fact concerning her qualifications.

It is also apparent that defendants have, in turn, carried their burden of articulating legitimate nondiscriminatory reasons for their actions. Plaintiff was subject to less favorable treatment than desired primarily because her teaching performance, as reflected in student evaluations, was perceived to be substandard. This reason, supported by admissible evidence, is sufficient to rebut the presumption of discrimination created by plaintiff's prima facie case. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

 The burden thus shifts to plaintiff to demonstrate that the given reason is a mere pretext for discrimination. She may do so by demonstrating: (1) that the given reason has no basis in fact; (2) that the given reason is not the actual reason; or (3) that the given reason is insufficient to explain

defendant's unfavorable treatment of her. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1390 (6th Cir.1993). Importantly, however, plaintiff must show not only that the given reason is false, but also that discrimination was the real reason. *St. Mary's Honor Center, supra,* —— U.S. at ——–——, 113 S.Ct. at 2752–53. Plaintiff has shown neither.

■ As the fact summary in part I, *supra,* makes clear, both the divisional personnel committee and Dean Travis had continuing serious concerns about plaintiff's teaching performance from the outset. From the beginning of her employment, plaintiff had been informed in the Grand Valley Faculty Handbook of the criteria by which faculty members would be evaluated by the divisional personnel committee in connection with contract renewals, promotions and tenure. Among the four criteria listed in the handbook, "teaching effectiveness" is expressly identified as the most important. "Effective teaching performance" is defined as follows:

> This includes, but is not limited to, knowledge of the field taught, classroom and tutorial performance, communication skills, human relations skills, evaluation skills, curricular development, and performance as an academic advisor. All academic units will use student evaluations as one method to determine teaching effectiveness of faculty members.

Thus, plaintiff was informed not only that teaching performance was critically important, but also that student evaluations would be used in evaluating teaching performance.

Plaintiff acknowledges that some student evaluations were negative, but argues they were neither so numerous or extreme as to justify defendants' treatment of her. She cites Travis's letter of April 9, 1991, commending her on her teaching improvement. She also cites the grievance subcommittee finding that student ratings of her teaching remained generally consistent after April 1991.

Yet, Travis's observation that plaintiff's teaching performance had improved sufficiently to warrant a two-year contract renewal was contrary to the personnel committee's assessment, and plaintiff was so advised. That is, plaintiff had reason to believe that further improvement was or would be required. Further, the grievance subcommittee noted that the post-April 1991 "consistent" student evaluations continued to include negative comments. The subcommittee also expressly refrained from opining whether plaintiff's performance had improved enough to satisfy Grand Valley's standard of teaching excellence. The subcommittee majority merely concluded that plaintiff deserved further opportunity to demonstrate her teaching improvement because she may have been misled by ambiguous communications from Travis.

The point is that even though plaintiff gives the Court reason to question the wisdom or correctness of defendants' decisions, the fact remains that majorities of several bodies of her peers, including numerous faculty members who are not named as defendants, consistently concluded that her teaching improvement was not satisfactory. Peer evaluations of plaintiff's performance at the time of tenure consideration are revealing. To be sure, they reflect conflicting opinions concerning plaintiff's performance and suitability for tenure, but the comments of those who found plaintiff's improvement unsatisfactory include insights which, right or wrong, reflect genuineness of belief and belie the argument that unsatisfactory teaching performance was not the real reason for defendants' actions.

Neither is the Court inclined, based on the present record, to attempt a qualitative assessment of the student evaluations in order to determine whether they reflect a sufficient reason to deny tenure. The faculty handbook specifically advises that student evaluations are used in considering tenure. Caselaw recognizes the appropriateness of this practice. See *Brousard–Norcross v. Augustana College Ass'n,* 935 F.2d 974, 976 (8th Cir.1991) ("student reaction is a legitimate, nondiscriminatory factor on which to evaluate tenure candidates"); *Villanueva, supra,* 930 F.2d at 130. Student evaluations unquestionably represent a useful tool in evaluating teaching effectiveness. That said, it is not for the Court to determine, as a "super personnel council," what constitutes a suffi-

cient amount of negative feedback from students to justify denial of tenure. *Brousard–Norcross, supra,* 935 F.2d at 976. The fact that some admittedly negative student evaluations were legitimately considered by plaintiff's colleagues as sufficient justification for denying tenure undermines plaintiff's position that defendants acted irrationally or arbitrarily.

Moreover, even if the Court were to find that plaintiff had succeeded in casting sufficient doubt upon the given reason to create a question of fact concerning its genuineness, plaintiff's claims would fail for lack of any substantial evidence that discrimination was the real reason. Plaintiff admits that although she believes she is the victim of unfairly disparate treatment, she knows not whether the discrimination is based on her national origin, religion or sex.

As evidence of sex discrimination, she cites a comment made by defendant TenEyck at a faculty meeting in the fall of 1992 to the effect that plaintiff thought Dave Darnell, a faculty member, was cute. Plaintiff was apparently humiliated by the comment and construed it as sexually harassing. Her administrative complaint resulted in an investigation and a finding of no evidence of sexual harassment. Indeed, such an isolated and ambiguous comment offers only very weak support for the notion that defendant TenEyck recommended denial of tenure because of sex discrimination. See *Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1025–26 (6th Cir.1993).

Plaintiff points to evidence that when she was hired at a base salary of $26,000, another new faculty member in the School of Education with comparable credentials, Don Pottorff, a white male, received a base salary of $28,800. She also complains that Pottorff's salary increased at a higher rate than hers.

Defendants have conclusively rebutted any suggestion of improper discrimination by showing that Pottorff is not "comparable," because he was not similarly situated in all relevant respects. See *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992). For instance, Pottorff had several years' post-doctoral teaching experience in his field at the college level at the time of hire. He has also received more favorable student and peer evaluations at Grand Valley than plaintiff and enjoys the respect of his colleagues at Grand Valley and beyond.[3,4]

Plaintiff complains that Doris Rucks was granted tenure notwithstanding negative student evaluations, evidencing discrimination. Inasmuch as Rucks is an African–American female, her comparison is ostensibly offered as evidence of national origin discrimination. Yet, the Rucks example tends to defeat plaintiff's claim that she is the victim of a monocultural (white European male) institutional bias. Moreover, defendants have demonstrated that Rucks, too, was not similarly situated in that (1) she is in the Department of Anthropology; (2) the student criticisms of her teaching performance were qualitatively different; and (3) her bid for tenure enjoyed the strong support of her colleagues.

Plaintiff contends that statistical evidence indicates a disproportionately high number of women are among faculty members who were denied tenure at Grand Valley from 1987 to 1994. Defendants have exposed the futility of plaintiff's statistics by demonstrating even more relevantly that, during the same period in the Division of Social Sciences and the Department of Education, a disproportionately low number of white males were granted tenure.

Finally, plaintiff asks the Court to consider all of the above-cited circumstances cumulatively and find that, together, they create a

---

**3.** The Court observes also that the grievance subcommittee determined that plaintiff "received merit raises consistent with those received by her peers and occasionally exceeding the raises of her peers."

**4.** The Court recognizes that, assuming plaintiff has made out a prima facie case in support of her Equal Pay Act claim, defendant Grand Valley has the burden of justifying the pay disparity.

*E.E.O.C. v. J.C. Penney Co., Inc.,* 843 F.2d 249, 253 (6th Cir.1988). Grand Valley may do so by showing that the disparity is not based on sex, but on a legitimate business reason, used reasonably. *Id.* Through the affidavit of Dean Travis, Grand Valley has persuasively explained the legitimate and reasonable grounds for Pottorff's higher salary. Plaintiff has not rebutted this showing.

genuine fact question concerning discriminatory animus. She cites *Gutzwiller, supra*, and this Court's own opinion in *E.E.O.C. v. Regency Windsor Mgmt. Co.*, 862 F.Supp. 189, 194-95 (W.D.Mich.1994). Both cases are clearly distinguishable. Having duly considered the parties' voluminous briefs and exhibits, and having carefully tested both counsel at the hearing on this motion, the Court is firmly convinced that plaintiff has not adduced evidence based upon which a reasonable trier of fact could conclude that defendants' adverse treatment of her was motivated by national origin, religious or sex discrimination. Absent such evidence, no further judicial interference with the University's academic freedom is warranted.

**V**

Plaintiff unquestionably believes she has been treated unfairly. Not knowing why defendants might have discriminated against her, she appears to have assumed the perceived disparate treatment was related to a protected characteristic. She evidently recognizes, however, that she has been perceived by others as confrontational, demanding, difficult. She also recognizes that this perception may have contributed to negative student and peer evaluations. She would have the Court accept, without evidentiary support, that being opinionated and direct are immutable characteristics, by-products of her native Israeli culture. To the extent such qualities are perceived or characterized negatively as confrontational, demanding or difficult, plaintiff contends she is the victim of cultural bias. When such bias results in adverse treatment, she contends she is unlawfully discriminated against.

Plaintiff's reasoning is factually, legally and logically flawed. First, there is no basis for concluding that plaintiff's asserted tendency to be opinionated and direct are immutable characteristics dictated by her Israeli background, rather than mere personality or behavior traits. Second, the law does not prohibit discrimination in the workplace based on conduct that interferes with performance of job responsibilities. Third, when a teacher's communication and relational habits are perceived both by students and colleagues as frustrating teaching effectiveness, the academy's very mission, the law ought not interfere with legitimate corrective measures, even though the deleterious habits be culturally influenced.

**VI**

Here, the Court finds no basis for concluding that defendants' actions were other than legitimate, reasonable, and not unlawfully discriminatory. There is no genuine issue as to any material fact and defendants are entitled to summary judgment on all of plaintiff's claims that they discriminated against her in the conditions of her employment on the basis of her national origin, religion and/or sex. A judgment order consistent with this opinion shall issue forthwith.

**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

On August 21, 1995, the Court awarded summary judgment to defendants on all of plaintiff's claims. In essence, the Court concluded that plaintiff had failed to adduce evidence creating a genuine fact issue on her contention that defendants' given reasons for refusing to grant her tenure were a pretext for unlawful discrimination. Plaintiff now moves the Court to alter or amend its judgment under Fed.R.Civ.P. 59(e). In support, plaintiff asks the Court to consider evidence not formerly presented and objects to alleged errors in the Court's findings of fact.

Plaintiff's motion is entrusted to the Court's discretion. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). A judgment may generally be altered or amended for one of three reasons: (1) because of an intervening change of controlling law; (2) because evidence not previously available has become available; or (3) because necessary to correct a clear error of law or prevent manifest injustice. *Keweenaw Bay Indian Community v. State of Michigan*, 152 F.R.D. 562, 563 (W.D.Mich. 1992). See also *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90-91, n. 3 (1st Cir.1993); *Torre v. Federated Mutual Ins. Co.*, 862 F.Supp. 299, 300-01 (D.Kan.1994); *Pacific*

*Group v. First State Ins. Co.*, 841 F.Supp. 922, 931 (N.D.Cal.1993).

I

The new evidence plaintiff asks the Court to consider consists of the opinions of her expert John P. Flynn, Ph.D., M.S.W., reflected in a 66–page written report dated May 8, 1995, and the transcript of his deposition taken on May 25, 1995. Dr. Flynn's opinions were formulated after examination of University records. According to plaintiff's characterization, he opines that "the decision to deny Dr. Javetz was based upon criteria outside of University policies, and that the tenure policies were not fairly applied to Dr. Javetz." Neither the May 8, 1995 report nor the 300–page deposition transcript prepared on June 6, 1995, was available on May 4, 1995, when this Court heard oral argument on defendants' motion for summary judgment.

■ Yet, evidence is "unavailable," so as to justify its late submission by way of a motion under Rule 59(e), only if it could not, in the exercise of reasonable diligence, have been submitted before. *Keweenaw Bay, supra.* See also *Buell v. Security General Life Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir.1993), *cert. denied,* ⸺ U.S. ⸺, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993) ("When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence"); *RGI, Inc. v. Unified Industries, Inc.*, 963 F.2d 658, 662 (4th Cir.1992) (supplemental affidavit may be considered in support of Rule 59(e) motion only for justified reason); *Russ v. International Paper Co.*, 943 F.2d 589, 593 (5th Cir.1991) (consideration of supplemental evidence must be justified by showing of earlier unavailability); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174–75 (5th Cir. 1990), *cert. denied,* ⸺ U.S. ⸺, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993) (party's "excusable neglect" insufficient to justify consideration of new evidence as earlier unavailable); *Pacific Group v. First State Ins. Co., supra,*

841 F.Supp. at 933 (if evidence was, through exercise of reasonable diligence, previously available, Rule 59(e) motion fails as a matter of law). In exercising its discretion to determine whether the belatedly filed Dr. Flynn materials should be considered, the Court must strike a proper balance between the need to uphold the integrity of pretrial schedules and procedures, the need to uphold the finality of decisions made, and the need to render just decisions on the basis of all the pertinent facts. *Lavespere, supra,* 910 F.2d at 174.

■ The discovery deadline in this case was extended from February 15 to March 10, 1995, by order of United States Magistrate Joseph G. Scoville dated January 27, 1995. Yet, plaintiff admits that her attorney did not supply Dr. Flynn with the materials he was to examine in preparation to render his opinions until after March 10th. Thus, when defendants attempted to depose Dr. Flynn on March 14th, he was not prepared to render opinions. Plaintiff explains that she was tardy in preparing Dr. Flynn because completion of her own deposition was delayed by health concerns and because defendants had failed to timely produce certain documents.

The question of fault for the tardiness of Dr. Flynn's report and deposition was addressed at length by Magistrate Judge Scoville at a hearing on defendants' motion to strike Dr. Flynn as a witness on April 12, 1995. The Court has reviewed the transcript of that hearing. Magistrate Judge Scoville ultimately decided to deny the motion to strike. That is, he allowed plaintiff to use Dr. Flynn as an expert witness in the trial of this matter. He reached this conclusion, however, only after finding, upon plaintiff's counsel's representation, that Dr. Flynn played no role in plaintiff's opposition to defendants' motion for summary judgment. In fact, Magistrate Judge Scoville specifically observed that he would not have denied the motion to strike "if Dr. Flynn played a big part in the summary judgment calculus because then prejudice to the defendants would be more apparent." Hearing Tr. p. 71. Magistrate Judge Scoville would not have allowed the Dr. Flynn materials to be used in opposition to the motion for summary judg-

ment because defendants would have been unfairly prejudiced absent an opportunity to rebut them and because he found that plaintiff had failed in her duty to prepare her expert witness in good faith. He refrained from finding that plaintiff or her counsel had been unintentionally dilatory, but rejected her explanation for the tardiness and characterized plaintiff's conduct as "negligence at least." See *id.*, pp. 65–69. Plaintiff did not appeal Magistrate Judge Scoville's ruling.

The Court further observes that plaintiff never moved for an extension of the March 10th discovery deadline.[1] Neither did plaintiff even mention Dr. Flynn's impending deposition at the May 4th summary judgment motion hearing, when the Court questioned plaintiff's counsel at length concerning evidentiary support for her unlawful discrimination claims. Nor did she seek to supplement the record after the hearing while the motion for summary judgment remained under advisement until August, even though the Dr. Flynn materials were fully available in early June.

Considering all these circumstances, the Court cannot find that the Dr. Flynn materials were not, in the exercise of reasonable diligence, available to plaintiff prior to this Court's summary judgment ruling. The Court concurs with Magistrate Judge Scoville's assessment that plaintiff must bear the blame for her failure to timely prepare her expert and timely submit his opinion evidence in opposition to the summary judgment motion. The Court will not now speculate as to how it might have ruled on a motion to extend the March 10th discovery deadline. Yet, it is clear that plaintiff ought to have made such a motion—out of respect for the established schedule and for the purpose of at least apprising the Court of the discovery difficulties. Her request for relief several months after the fact and only after receiving an adverse ruling comes too late. The need to uphold the integrity of the pretrial schedule, to safeguard defendants from

unfair prejudice, and the need to uphold the finality of the Court's summary judgment weigh too heavily against consideration of plaintiff's "new" evidence.

Moreover, the Court remains unpersuaded that consideration of Dr. Flynn's opinions would, in the interest of justice, warrant any amendment of the Court's summary judgment. The Court's ruling was based essentially on the conclusion that plaintiff had failed to adduce evidence demonstrating that defendants' given reasons for denying her tenure were false *and* that unlawful discrimination was the real reason. Absent such evidence, plaintiff fails to create a genuine issue as to any material fact. See *St. Mary's Honor Center v. Hicks*, —— U.S. ——, —— ——, 113 S.Ct. 2742, 2752–53, 125 L.Ed.2d 407 (1993); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083–85 (6th Cir.1994) (in order to create a submissible question on the credibility of the employer's proffered explanation, a plaintiff who would show that the employer was not actually so motivated must do so by a preponderance of the evidence, including additional evidence of discrimination, which would permit a reasonable juror to conclude that the evidence overwhelms the employer's non-discriminatory reasons).[2]

Dr. Flynn's opinions, that defendants employed criteria outside of University policies and applied the policies unfairly, do not fill the void. Such opinions would arguably be relevant to plaintiff's procedural and substantive due process claims. However, plaintiff's procedural due process claim was subject to dismissal by plaintiff's own acknowledgment, and the substantive due process claim was properly treated as substantially identical to her discrimination claims. Summary Judgment Opinion, pp. 8–9. With respect to the discrimination claims, Dr. Flynn's opinions might succeed in casting doubt upon the sufficiency of defendants' proffered reasons, but they hardly suggest that defendants' per-

1. It appears the parties inquired of the Court's case manager in early February, whether the Court would approve a stipulation to extend the deadline to March 31, 1995, and were told no. However, the inquiry was not followed by a motion.

2. Plaintiff's contrary argument concerning her burden to show pretext is based on caselaw which predated the clarifying and now controlling *St. Mary's Honor Center* and *Manzer* decisions.

sistent concerns about her teaching effectiveness were not the actual reason for denial of tenure or that some sort of unlawful discrimination was.[3]

Thus, even if Dr. Flynn's opinions were considered in conjunction with plaintiff's other evidence, the evidence would not amount to that quantum which a reasonable jury could find to constitute a preponderance of the evidence, overwhelming defendants' proffered reasons and revealing them to be pretextual. Even if the Court had considered Dr. Flynn's opinions, its opinion that defendants are entitled to judgment as a matter of law would not have been altered.

## II

Secondly, defendant moves the Court to amend its judgment so as to correct alleged factual errors which are said to undermine the Court's legal conclusions. The Court has duly considered plaintiff's arguments and finds them to be unpersuasive. Plaintiff quarrels with the Court's characterization of the evidence in what amounts to a rehashing of arguments previously considered and rejected by the Court. This is not a proper purpose for a motion under Rule 59(e). *Keweenaw Bay, supra,* 152 F.R.D. at 563; *Torre, supra,* 862 F.Supp. at 300–01.

## III

In sum, the Court is of the settled opinion that its summary judgment ruling was and is proper. No manifest injustice has been visited upon plaintiff. The motion to alter or amend the judgment must be and is hereby **DENIED.**

**IT IS SO ORDERED.**

---

**3.** Dr. Flynn's "expert" opinions would be of questionable usefulness to the trier of fact in any event. Under Fed.R.Evid. 702, a witness qualified as an expert by specialized knowledge may testify thereto in the form of opinion *if* such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Dr. Flynn is a retired professor of social work and former Dean of the School of Social Work at Western Michigan University. He opines that defendants employed criteria outside of University policies and applied the policies unfairly. Plaintiff has not explained how Dr. Flynn's experience in the social work academy has conferred specialized knowledge to assess the correct and/or fair application of another university's tenure policies. Further, to the extent such matters are even relevant to plaintiff's discrimination claims, Dr. Flynn's opinions appear to reflect little more than one person's view of the evidence that would be placed before the jury with direction as to what result they should reach in determining defendants' credibility. Such opinions do not materially assist the factfinder, but represent an improper invasion of the jury's province and are not within the scope of legitimate expert testimony. See *Berry v. City of Detroit,* 25 F.3d 1342, 1348–54 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995); *Black v. Ryder/P.I.E. Nationwide, Inc.,* 930 F.2d 505, 510 (6th Cir.1991).