Virgil ZINK, Plaintiff–Appellant,

v.

**GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY, Defendant–Appellee.**

No. 02–5681.

United States Court of Appeals, Sixth Circuit.

Sept. 5, 2003.

Kirk Hoskins, Louisville, KY, for Plaintiff–Appellant.

Elizabeth S. Feamster, Fowler, Measle & Bell, Lexington, KY, for Defendant–Appellee.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant Virgil Zink ("Zink") appeals the district court's judgment enforcing the settlement agreement entered into between Zink and the Defendant–Appellee General Electric Capital Assurance Corporation ("GE"). Zink filed a breach of contract claim against GE after GE stopped paying him long-term care benefits under his long-term care insurance policy. At the close of settlement negotiations, Zink, through his counsel Scott Wilhoit ("Wilhoit"), settled his claim with GE for $25,000. Zink later refused to sign the release agreement accompanying the settlement agreement, and refused to accept the settlement payment, arguing that he never gave Wilhoit express authority to settle his claim. GE filed a motion to enforce the settlement. Ultimately, the district concluded that Zink was bound by the settlement agreement because Wilhoit had obtained Zink's express authority to settle the claim against GE.

Zink filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The district court denied this motion, finding that Zink failed to present newly discovered evidence or demonstrate that the district court committed a manifest error of law. In this timely appeal, Zink challenges the district court's ruling, arguing that the district court's factual determinations were clearly erroneous and that the district court misapplied the relevant law when it determined that Wilhoit had obtained Zink's express authority to settle the claim against GE. For the reasons set forth below, we AFFIRM the district court's judgment.

## I.  BACKGROUND

In 1989, Zink purchased a long-term care insurance policy from AMEX Life Insurance Company ("AMEX"). Upon merging with AMEX, GE assumed all of AMEX's liabilities and debts. Under the terms of his long-term care insurance policy, Zink was entitled to receive a daily benefit of fifty dollars for each day that he required nursing home care, for a maximum period of four years. On or about

February 18, 2000, following a brief period of hospitalization, Zink was admitted to the skilled care facility of the Jefferson Place Nursing Home, in Louisville, Kentucky. This nursing home provides three levels of care: skilled care; immediate care; and personal care. Zink received skilled care from February 18, 2000 until March 27, 2000. From March 28, 2000 until April 12, 2000, Zink received skilled care. From April 13, 2000 up to the present, Zink has been receiving personal care.

Shortly after moving to the Jefferson Place Nursing Home, Zink timely submitted a benefits claim to GE. From February 18, 2000 until April 11, 2000, GE paid Zink a fifty dollar benefit per day, in accordance with the terms of his long-term care insurance policy. GE stopped making payments on April 12, 2000, asserting that the level of care that Zink was receiving did not satisfy the definition of the term "nursing home," as defined in Zink's insurance policy. GE was in non-payment from April 12, 2000 until May 31, 2001 – a total of 415 days.

In February of 2001, Zink filed a breach of contract action against GE in an attempt to force GE to continue providing benefit payments. Zink also alleged that GE acted in bad faith when it stopped paying benefits under his insurance policy. Zink was eighty-nine years old when he filed this lawsuit. Zink retained Scott Wilhoit ("Wilhoit") to represent him in this action. Zink's damages were estimated at $75,000. On February 20, 2001, Zink's claim was removed to the United States District Court for the Western District of Kentucky, on the basis of diversity jurisdiction.

In an attempt to resolve this dispute, GE's counsel, Michael Liska ("Liska"), began settlement negotiations with Wilhoit. GE offered to settle Zink's claim for $20,750, in exchange for a total release of all claims and a total surrender of his policy. This settlement offer reflected the fifty dollar daily benefit that Zink would have been entitled to during the period of April 12, 2000 until May 31, 2001, if he had been receiving covered care throughout this entire period. On July 9, 2001, Wilhoit mailed a letter to Zink in which he informed Zink about GE's initial offer and recommended that Zink submit a counteroffer of $25,000, in order to ensure that the settlement covered his legal expenses.

Wilhoit alleged that he spoke with Zink on September 11, 2001, and received Zink's authorization to settle the claim against GE for $25,000. Wilhoit documented this conversation in a handwritten note on a file copy of the July 9 letter to Zink. This note read, "Spoke with VZ [Virgil Zink], agrees to accept $25,000 SW [Scott Wilhoit]." (J.A. at 115.) Zink later denied that this conversation took place and alleged that he had very little contact with Wilhoit concerning his claim.

In a letter dated September 11, 2001, Wilhoit submitted a counteroffer of $25,000 to GE. GE accepted this counteroffer on September 13, 2001. On September 20, 2001, after repeated attempts to contact Zink via telephone, Casey Wood ("Wood"), an associate at Wilhoit's law firm, mailed Zink a letter indicating that GE had accepted his counteroffer of $25,000. A few days later, after receiving Wood's letter, Zink telephoned Wilhoit's office and spoke to Wood. During this conversation, Zink asserted that he wanted to settle his claim for $27,000. Wood informed Zink that GE had already accepted his counteroffer of $25,000, and that he was bound by the settlement agreement. Shortly thereafter, Wilhoit spoke with Zink. During this conversation, Zink asserted that he wanted $29,000 to settle his claim. Wilhoit advised Zink that he was probably bound by the settlement agreement because GE had accepted his $25,000 counteroffer. Wilhoit

alleges that, during this conversation, Zink later indicated that he understood that he was bound by the settlement agreement. However, a few days later, Zink retained new counsel, and continued to assert that he was not bound by the settlement agreement because he had not given Wilhoit express authority to settle his claim against GE.

On September 27, 2001, Liska mailed Wilhoit a settlement check for $25,000, along with a release agreement and an agreed order of dismissal. Upon receipt of these documents, Wilhoit notified Liska that Zink would not comply with the terms of the settlement agreement, and that Zink wanted to settle his claim for more than $25,000. Subsequently, GE filed a motion to enforce the settlement agreement.

The district court granted GE's motion, finding that Zink gave Wilhoit express authority to settle his claim against GE. In reaching this conclusion, the district court found that Zink was adequately informed about the settlement agreement because "the documents in the record evinces a typical give and take settlement negotiation process between counsel, with appropriate communications of these negotiations to the client." (J.A. at 15.) The district court also found that Zink had given Wilhoit actual authority to settle his claim because "Zink agreed with making a counteroffer of $25,000." (J.A. at 16.)

Zink filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that the district court erred when it determined that Wilhoit had obtained Zink's express authority to settle Zink's claim against GE. The district court denied Zink's motion, finding that Zink merely reargued the evidence previously presented to the court and failed to demonstrate that the district court erred when it considered this evidence, or that the district court misapplied the relevant law when it concluded that

Wilhoit had express authority to settle Zink's claim.

Zink filed this timely notice of appeal, arguing that the district court erred when it concluded that Wilhoit obtained Zink's express authority to settle his claim.

## II. DISCUSSION

Zink challenges the district court's order to enforce the judgment, arguing that the district court misapplied the law and that the district court's factual findings were clearly erroneous. The district court previously rejected both of these arguments when it denied Zink's motion to alter or amend the judgment. We review the denial of a motion to alter or amend the judgment for an abuse of discretion. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir.2003). A motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) may be granted for any of the following reasons: "(1) because of an intervening change in controlling law, (2) because evidence not previously available has become available, or (3) because necessary to correct a clear error of law or prevent manifest injustice." *Javetz v. Bd. of Control, Grand Valley State Univ.*, 903 F.Supp. 1181,1190 (W.D.Mich.1995) (citing *Keweenaw Bay Indians Cmty. v. State of Mich.*, 152 F.R.D. 562, 563 (W.D.Mich.1992)). A motion to reconsider does not afford parties an opportunity to reargue their case. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 373 (6th Cir.1998) (citing *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992)).

The settlement agreement was entered into in Kentucky. As a result, Kentucky law governs whether the settlement agreement was enforceable. Under Kentucky law "in the event of a dispute as to whether the client has given settlement authority, the trial court shall summarily decide

the facts." *Clark v. Burden*, 917 S.W.2d 574, 577 (Ky.1996). We review the district court's factual findings under the clearly erroneous standard. *See United States Dep't of Labor v. Cole Enters. Inc.*, 62 F.3d 775, 778 (6th Cir.1995) (citing FED. R. CIV. P. 52(a), *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1067 (6th Cir.1994)). This standard does not permit a reviewing court to reverse a district court's findings of fact because the reviewing court is convinced that it would have decided differently." *E.E.O.C. v. Yenkin–Majestic Paint Corp.*, 112 F.3d 831, 833 (6th Cir.1997) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1942); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).

In *Clark*, the Kentucky Supreme Court held that an attorney cannot bind his client to a settlement agreement without the client's express authority to settle the claim. *See Clark*, 917 S.W.2d at 576. "Without such authority, no enforceable settlement agreement may come into existence." *Id.* In adopting this rule, in order to define the term "express authority," the Kentucky Supreme Court looked to the Kentucky Supreme Court Rules on Professional Conduct Rule 3.130–1.2(a) ("Rule 1.2(a)") and Rule 3.130–1.4(b) ("Rule 1.4(b)"). *Id.* at 575. Rule 1.2(a) provides that "[a] lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." Ky. Sup.Ct. R. 3.130, R. Prof'l. Conduct 1.2(a). Rule 1.4(b) requires attorneys to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Ky. Sup.Ct. R. 3.130, R. Prof'l. Conduct R. 1.4(b).

Here, after considering Zink's motion to alter or amend the judgment to enforce the settlement, the district court denied Zink's motion, finding that Zink failed to present any new evidence or demonstrate that the district court committed a manifest error of law when it concluded that Wilhoit had obtained Zink's express authority to settle the claim against GE. We find no abuse of discretion in the denial of this motion.

In concluding that Wilhoit had express authority to settle Zink's claim, the district court examined the facts in order to determine whether Wilhoit provided Zink with adequate information about his case, and whether Zink gave Wilhoit actual authority to settle his claim. After reviewing the evidence before it, the district court found that the facts supported the conclusion that both of the factors outlined in *Clark* were satisfied, and that, as a result, Zink was bound by the $25,000 settlement agreement. In reaching this conclusion, the district court noted that Wilhoit's July 9 letter to Zink provided Zink with sufficient information from which he could make an informed decision whether to accept GE's offer or submit a counteroffer. In this letter, Wilhoit informed Zink about GE's initial settlement offer, and advised him that "[w]hile I believe that this is a 'good start,' ... [i]t is my recommendation that we demand an additional $5,000.00 to cover the costs of the litigation as well as to compensate you, in part, for the inconvenience occasioned by this event." (J.A. at 95.) Wilhoit also wrote a letter to Zink's present counsel in which he noted, that during his telephone conversation with Zink regarding GE's initial settlement offer, he advised Zink that "we may get more at trial, but there was no guarantee of the same." (J.A. at 97.)

Based upon the evidence before it, the district court also concluded that Zink had authorized Wilhoit to submit a counteroffer of $25,000, and that Wilhoit complied with this instruction. In reaching this conclusion, the district court relied upon the note on Wilhoit's July 9 letter to Zink, which indicated that Zink wanted to settle his claim for $25,000. GE also submitted a letter that Wilhoit wrote to Zink's present counsel, in which Wilhoit stated that after he spoke with Zink about GE's initial settlement offer, "Mr. Zink told me to make the $25,000 counter-demand." Zink merely denied authorizing Wilhoit to settle his claim, and denied that Wilhoit had provided him with sufficient information to make an informed decision about his case. Based upon the evidence before it, the district court accepted the facts presented by GE, and concluded that Zink had authorized Wilhoit to settle his claim, and that Wilhoit had provided Zink with sufficient information to make an informed decision about his case.

On appeal, as argued in the court below, Zink maintains that the district court's factual determinations were clearly erroneous and that the district court committed a manifest error of law when it applied the holding in *Clark*. Specifically, Zink argues that the evidence does not support the district court's conclusion that Wilhoit had obtained Zink's express authority to settle the claim against GE. We disagree.

Although the record indicates that Wilhoit and Zink may have had some difficulty contacting each other, the record clearly supports the district court's factual findings. Zink has not presented any newly discovered evidence to support his allegations that he never gave Wilhoit express authority to settle his claim. As a result, we find no clear error in the district court's factual determinations.

Similarly, we conclude that the district court did not commit a manifest error of law when it determined that express authority existed. The district court first considered whether Zink gave Wilhoit actual authority to settle his claim, and then whether Wilhoit provided Zink with sufficient information to make an informed decision about his case. Based upon its factual determinations, the district court concluded that both of the factors outlined in *Clark* were satisfied in this case, and that, as a result, Zink was bound by the terms of the settlement agreement. Because the district court carefully considered both of the factors outlined in *Clark* before concluding that express authority existed, it is not apparent that the district court misapplied the relevant law.

Finding that the district court's factual findings were not clearly erroneous and that the district court did not commit a manifest error of law, we conclude that Zink did not satisfy his burden under Rule 59(e). Accordingly, the district court did not abuse its discretion when it denied Zink's motion to alter or amend the judgment to enforce the settlement.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.