GENERAL TRUCK DRIVERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, LOCAL NO. 957, Plaintiff–Appellant,

v.

DAYTON NEWSPAPERS, INC., Defendant–Appellee.

No. 98–3530.

United States Court of Appeals, Sixth Circuit.

Argued: March 18, 1999

Decided and Filed: Aug. 19, 1999

bargaining agreement. The court below set aside the arbitrator's decision, finding that Elliott had committed an "assault" and, thus, the newspaper was entitled to terminate him under the agreement. We reverse, on the ground that the court below did not have the authority to vacate the arbitration award simply because it disagreed with the arbitrator on the question of whether Elliott's behavior constituted "just cause" for his termination. The arbitrator arguably construed and interpreted the collective bargaining agreement which, under the standard outlined by the Supreme Court in *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), is all that is needed to sustain the award.

John R. Doll (argued and briefed), Julie C. Ford, Diana S. Brown (briefed), Logothetis, Pence & Doll, Dayton, Ohio, for Plaintiff–Appellant.

James M. Hill (argued and briefed), O'Diam, Turner, McNamee, Hill & Stone, Dayton, Ohio, Brett L. Thurman (briefed), Dayton, Ohio, for Defendant–Appellee.

Before: KRUPANSKY, BOGGS, and CLAY, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which KRUPANSKY, J., joined. CLAY, J. (pp. 439–446), delivered a separate dissenting opinion.

## OPINION

BOGGS, Circuit Judge.

Plaintiff union appeals a judgment for defendant newspaper company vacating an arbitration award in favor of the union. Union employee Rick Elliott, a newspaper carrier dispatcher, was discharged by the company following an incident in which he grabbed a carrier by the neck. An arbitrator had ruled that Elliott was entitled to reinstatement because this incident did not constitute "just cause" for his termination as required under the parties' collective

## I.

Rick Elliott was a supervisory employee at the Beavercreek, Ohio Distribution Branch of defendant-appellee Dayton Newspapers, Inc. ("DNI"). As Branch Captain, he was in charge of the morning distribution of newspapers to approximately 100 paper carriers. Elliott was a member of the General Truck Drivers, Chauffeurs, Warehousemen & Helpers Local Union No. 957 ("the Union"). The Union and DNI had a collective bargaining agreement, which read, in pertinent part:

*ARTICLE 5. UNION–COMPANY RELATIONSHIP*

. . . .

Section 3. The management of the plant and the direction of the working force including the right to hire, promote, suspend, discipline, discharge for proper cause, the right to transfer, the right to change working processes and equipment, and the right to publish and enforce reasonable plant rules for the performance of duties hereunder . . . are vested exclusively in the Company except as is set forth in writing in this Agreement. . . .

*ARTICLE 11. GRIEVANCE AND ARBITRATION PROCEDURE.*

. . . .

Section 3. The Company agrees not to discharge or discipline any employee without just cause. The Company shall have the right at any time to promulgate rules and regulations and all employees shall be subject to such rules and regulations. The Company shall post such rules and regulations. . . .

Section 4. The arbitrator shall have no power to change, modify, add to or detract from any terms of the contract. In discharge cases, the arbitrator shall have the power, but is not required, to order the discharged employee reinstated with back pay, less amounts received elsewhere, if he shall determine that the Company did not discharge such employee for proper cause.

DNI's workplace rules read, in pertinent part:

The purpose of these rules and regulations is to provide you with examples of unacceptable conduct which may warrant discipline. Forms of discipline which the company may utilize include, but are not limited to, reprimand, suspension, or termination. The Company may impose any form of discipline, up to and including immediate discharge, that it deems appropriate.

. . . .

7. Assault or the use of profane, abusive or threatening language toward fellow employees or supervisory personnel.

Elliott was terminated for an act he committed on February 24, 1996; an arbitrator later made specific findings of fact regarding Elliott's behavior on that date, which are summarized in this paragraph. These factual findings were later relied upon by the court below. The arbitrator found that Elliott reported for work at approximately 2:30 a.m. Iris Thomas, one of DNI's paper carriers, arrived at Beavercreek at around 3:30 a.m. to pick up the newspapers she was responsible for delivering that day. Elliott, a married man, was having a "personal relationship" with Thomas, who was not his wife. When Thomas arrived at the distribution facility, she was intoxicated, and started shouting at Elliott. The two got into an argument that lasted for several minutes. During this argument, Thomas told Elliott that he had been unfaithful to her, that she "knew how to make people disappear," and that "she would make [Thomas], his wife, and his kids disappear." Thomas then took several newspaper inserts and threw them on the floor in anger. Elliott came up behind Thomas, who "appeared out of control," and "grabbed her by the neck and started her towards the door." Steven Noffsinger, another carrier, told Elliott to let Thomas go; Elliott told Noffsinger to mind his own business. Elliott then "guided [ ] Thomas and her papers out the door," put Thomas's newspapers in her car, and went back inside.

Elliott was terminated on March 23, 1996 for his "physical abuse of a co-worker" on February 24, 1996. Elliott filed a grievance protesting his termination. A hearing on the grievance was held before an arbitrator on September 20, 1996. DNI contended that it discharged Elliott because it had "zero-tolerance" policy against violence in the workplace. The Union, however, argued that Elliott was dismissed without "just cause." The arbitrator sided with the Union, finding that Elliott's conduct did not provide DNI with "just cause" for termination because it did not constitute "workplace violence" as Elliott "was anxious to get Ms. Thomas out of the building as soon as possible." He granted Elliott a back pay award and reinstatement on December 19, 1996.

DNI notified Elliott that it was reinstating him on January 27, 1997, and that Elliott should appear on that date for a meeting to discuss the terms and conditions of his employment. At the January 27, 1997 meeting, DNI told Elliott that he was reinstated, that the meeting was a pre-disciplinary hearing, and that he was

being terminated for being an "unacceptable liability risk." The Union filed a grievance protesting this discharge, but DNI refused to arbitrate the dispute, contending that it did not have an obligation to do so.

On March 24, 1997, DNI filed a complaint against the Union, pursuant to Ohio Rev.Code § 2711.13, seeking to vacate the December 1996 arbitration award. The union removed the case to district court. It also filed a complaint of its own in district court, seeking to (1) enforce the award under the Labor Management Relations Act, 29 U.S.C. §§ 141–168 ("the Act"),[1] and (2) require DNI to arbitrate the Union's grievance regarding Elliott's January 1997 termination. The two cases were consolidated.

A magistrate judge[2] granted summary judgment for DNI on its complaint and dismissed the Union's complaint. In vacating the arbitration award, the magistrate judge ruled that Elliott had committed an "assault" and, thus, the newspaper was entitled to terminate him under the collective bargaining agreement. The magistrate judge subsequently denied a motion by the Union to amend the judgment. The Union appeals.

## II

■ The standard of review of an arbitrator's award is very narrow, and the courts must therefore accord the arbitrator's decision substantial deference. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36–37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). If an arbitrator's award "draws its essence" from the collective bargaining agreement and is not

merely the arbitrator's "own brand of industrial justice," we must uphold the award. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). An arbitrator's award fails to draw its essence from the agreement when it (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided for in the agreement; (3) is not rationally supported by or derived from the agreement; or (4) is based on "general considerations of fairness and equity" instead of the exact terms of the agreement. *Cement Divisions, National Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir. 1986). If "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S.Ct. 364 (emphasis added). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car. Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), *quoted in Lattimer–Stevens Co. v. United Steelworkers of America*, 913 F.2d 1166, 1169 (6th Cir. 1990).

■ In making his award, the arbitrator found that the collective bargaining agreement required DNI to have "just cause" for terminating an employee, and that the company did not have "just cause"

---

1. This court's jurisdiction to hear cases of this type arising under the Act is granted by 29 U.S.C. § 185 (1998), which states that

   [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties,

without respect to the amount in controversy or without regard to the citizenship of the parties.

2. This case was referred to a magistrate judge by the district court with the consent of the parties. For this reason, the magistrate judge will simply be referred to as "the court below" in this opinion.

for Elliott's termination. The court below evidently thought that the arbitrator's award somehow conflicted with express terms of the collective bargaining agreement, because DNI's workplace rules, according to the court, "provide that DNI may discipline for . . . assault in the workplace . . . . [and] may impose any form of discipline including . . . termination." The court below believed that since DNI was permitted to enforce reasonable disciplinary rules, its termination of an employee under those rules for assault automatically constituted "just cause."

Under the law of this circuit, this is simply wrong. In *Bruce Hardwood Floors v. Southern Council of Indus. Workers*, 8 F.3d 1104 (6th Cir.1993), the plaintiff company and defendant union had entered into a collective bargaining agreement that expressly listed sleeping on duty as conduct for which employees "may" be discharged immediately. *Id.* at 1105. An employee was fired by the company for breaking this rule, but an arbitrator ordered the reinstatement of that employee on the ground that the employee was not terminated for "just cause," even though the arbitrator had found that employee had fallen asleep on job. *See id.* at 1105–06. The district court vacated the award on the ground that it did not "draw its essence" from the agreement between the Union and the Company, because once the Company determined that an employee had committed the offense of sleeping on the job, it necessarily established just cause for the employee's dismissal. *See id.* at 1106–07. This court reversed, noting:

> [One clause of the collective bargaining agreement at issue] states only that an employee "may" be discharged for committing the enumerated offenses. Moreover, section 1 [of the collective bargaining agreement] vests the Company with the right "to discipline and discharge employees for just cause." We find that these clauses . . . created sufficient basis for the arbitrator to conclude that he had the authority to review the penalty

imposed. The arbitrator's award thus was rationally derived from the terms of the agreement and not simply based on general considerations of fairness and equity. The award, moreover, did not conflict with the express terms of the agreement, and did not impose additional requirements not expressly provided in the agreement. *Whether the arbitrator's reading of the agreement was strained or even seriously flawed, and whether the district court's per se just cause analysis is more plausible, is irrelevant.* The arbitrator *arguably construed and applied the agreement*, and this is precisely what the parties bargained for him to do.

*Id.* at 1108 (citations omitted) (emphasis added).

*Bruce Hardwood Floors* compels a finding that the arbitrator in this case had a "sufficient basis . . . to conclude that he had the authority to review the penalty imposed." In fact, unlike the collective bargaining agreement at issue in *Bruce Hardwood Floors*, the collective bargaining agreement in this case does not even explicitly permit the employer to discharge an employee for committing certain specified workplace offenses; it only states that "[t]he Company shall have the right at any time to promulgate rules and regulations and all employees shall be subject to such rules and regulations."

Under the holding of the court below, DNI would seem to have *carte blanche* to terminate an employee for violating any workplace rule. However, the arbitrator, in construing and applying the collective bargaining agreement, felt that the agreement did not give DNI this power. The plain language of the collective bargaining agreement states only that DNI "agrees not to discharge or discipline any employee without just cause," and that the arbitrator is to determine whether "the Company did [or did] not discharge such employee for proper cause." The arbitrator's weighing of whether Elliott's behavior constituted "just cause" not only does not conflict with

express terms of the agreement, but in fact seems to be the type of review *compelled* by the agreement. At a bare minimum, the arbitrator's analysis is clearly "rationally supported by or derived from the agreement" and based on "the exact terms of the agreement," as required under *National Gypsum.*

The court below mistakenly believed that the arbitrator imposed additional requirements not expressly provided for in the agreement. The court stated, "The collective bargaining agreement nowhere provides that before DNI may discipline an employee for engaging in assault in the workplace, it must last for a particular period of time, that abuse and/or physical harm must have resulted, or that the assault requires that one person 'hit' another." This holding by the court is completely backwards, since it is based on the assumption that DNI had some sort of right to terminate employees for breaking the company rule on assault independent of "just cause." This is incorrect, for the collective bargaining agreement does not explicitly give the company such a right. The arbitrator was not creating "additional requirements" under the collective bargaining agreement; he was simply evaluating whether DNI had "just cause" to terminate Elliott for his behavior. In so doing, the arbitrator had the power to determine whether Elliott was fired for "just cause," even if the company was correct in its contention that the termination was simply the result of DNI's literal application of its workplace rules to Elliott's behavior. In fact, a rather strong argument can be made that the court below (and not the arbitrator) rendered a decision that was not rationally supported by or derived from the collective bargaining agreement, since it seems to have believed that the agreement gave DNI a right to terminate employees for engaging in any conduct that would be a technical assault in the workplace that was somehow independent of the company's right to terminate employees only for "just cause."

The court below failed to rule on two issues on the ground that its vacation of the arbitration award rendered the issues moot. DNI stated in its complaint that the arbitrator's award was not properly reduced by "amounts received elsewhere," as required by the CBA. The Union contended in its complaint that DNI's refusal to arbitrate its dispute with the Union regarding Elliott's second termination for being an "unacceptable liability risk" was a breach of DNI's obligations under the DNI. Since we hold that the vacation of the arbitration award was improper, this consolidated matter is remanded so that the court below can determine whether (1) the arbitrator's award was properly not reduced by "amounts received elsewhere," and (2) DNI's refusal to arbitrate its dispute with the Union regarding Elliott's second termination for being an "unacceptable liability risk" was a breach of DNI's obligations under the collective bargaining agreement.

## III

This case is REVERSED and REMANDED for further proceedings consistent with this opinion.

CLAY, Circuit Judge, dissenting.

Because I believe that this case presents an instance where the arbitrator's award did not "draw its essence" from the collective bargaining agreement ("CBA") at issue, I respectfully dissent from the majority's decision to reverse the district court's order granting summary judgment to Defendant, Dayton Newspapers, Inc. Although the scope of review regarding an arbitrator's award is very limited, the deference afforded to the award is not so great that the award may never be reversed. Rather, the arbitrator's award may be reversed when it fails to "draw its essence" from the CBA, and I believe that the district court was correct in concluding that the award in this case failed to do just that, inasmuch as the award conflicted with the express terms of the CBA and

imposed additional requirements not expressly provided in the agreement.

## I. The District Court's Order Granting Summary Judgment on Defendant's Motion to Vacate the Arbitrator's Award

This Court reviews a district court's decision *de novo* on a motion for summary judgment, including instances where summary judgment was granted in a labor arbitration case. *See Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers, Local Union No. 89*, 972 F.2d 129, 133 (6th Cir.1992). Although we review the district court's decision in such a case *de novo*, the scope of review is extremely limited. *See Monroe Auto Equipment Co. v. International Union, United Automotive, Aerospace and Agr. Implement Workers of Am. (UAW)*, 981 F.2d 261, 265 (6th Cir.1992). That is to say, because the parties have "authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). However, "[t]he arbitrator may not ignore the plain language of the contract," such that "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.*

In *Cement Divisions, National Gypsum Co. v. United Steelworkers of America*, this Court found that an arbitration award fails to derive its essence from the CBA under one of the following four conditions:

[W]hen (1) an award conflicts with express terms of the collective bargaining agreement; (2) an award imposes additional requirements that are not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

793 F.2d 759, 766 (6th Cir.1986) (citations omitted). Although the majority accurately states the standard under which we are to review the arbitrator's award, I believe that it misapplies this standard in analyzing the facts of this case.

The district court found that Arbitrator Goggin's award did not derive its essence from the CBA because the award conflicted with the express terms of the CBA and imposed additional requirements that were not expressly provided therein. Specifically, the district court found that as a matter of law, the award did not derive its essence from the CBA with respect to the award's finding that Defendant did not have "just cause" to discharge Elliott—i.e., the award's finding that Elliott's actions were not in violation of Defendant's promulgated rules. The district court also found that the award did not draw its essence from the CBA as a matter of law with respect to the award's finding the Elliott's procedural due process rights were violated here. I agree with the district court on both counts; however, my reasoning differs from the district court's reasoning on the procedural due process issue.

## A. Whether the Award Drew its Essence from the CBA as a Matter of Law on the Issue of Whether Defendant had "Just Cause" to Discharge Elliott?

The district court found that the award did not derive its essence from the CBA as a matter of law with respect to the issue of whether Defendant had just cause to terminate Elliott, inasmuch as Arbitrator Goggin found that Elliott "grabbed" Thomas, and yet concluded that Elliott had not engaged in "workplace violence" as to constitute grounds for discharge. The district court noted that the flaw in the award was that the standard for discipline/termination, as promulgated by Defendant's

workplace rules as incorporated into the CBA, is not "workplace violence" but rather, "assault." Specifically, the district found as follows:

> [I]n his recitation of his finding of fact, the arbitrator noted, "[a]t that point in time, the grievant came up behind Ms. Thomas, who was weaving back and forth and appeared out of control, and *grabbed her by the back of the neck* and started her toward the door." In spite of his factual finding that Mr. Elliott had grabbed Ms. Thomas by the back of the neck, the arbitrator concluded that Mr. Elliott had not engaged in "workplace violence." Therein lies the flaw in the arbitrator's award.
>
> There is absolutely no reference in the CBA or in [Defendant's] workplace rules to "workplace violence." Rather, the workplace rules adopted by [Defendant] clearly provide that "assault" may be grounds for discipline, up to and including discharge. The term "assault" is clear and unambiguous when given its plain and ordinary meaning and it needs no interpretation. Assault is a "violent physical or verbal attack". *Websters New Collegiate Dictionary* (1992 ed.)

(J.A. at 35 (emphasis is original).) I agree with the district court's reasoning and conclusion, and believe that the majority inaccurately applies our standard of review in reaching a contrary result.

The relevant portions of the CBA are as follows:

*ARTICLE    5.    UNION–COMPANY RELATIONSHIP*

> \*    \*    \*    \*    \*    \*
>
> Section 3.    The management of the plant and the direction of the working force including the right to hire, promote, suspend, discipline, discharge for proper cause, the right to transfer, the right to change working processes and equipment, and the right to publish and enforce reasonable plant rules for the performance of duties hereunder, the selection and retention of employees and

the working days to which they are assigned are vested exclusively in the Company except as is set forth in writing in the Agreement. The Company reserves exclusively all of its normal and inherent rights to manage the business, whether exercised or not, excluding only such rights as are specifically relinquished or modified by a specific provision of this Agreement.

> \*    \*    \*    \*    \*    \*

*ARTICLE    11.    GRIEVANCE    AND ARBITRATION PROCEDURE*

> \*    \*    \*    \*    \*    \*
>
> Section 3.    The Company agrees not to discharge or discipline any employee without just cause. The Company shall have the right any time to promulgate and enforce rules and regulations and all employees shall be subject to such rules and regulations. The Company shall post such rules and regulations. No member of the bargaining unit shall be discharged or disciplined with loss of pay without first being given a hearing. At such a hearing, an officer or Business Agent of the Union shall be present. The hearing shall take place within 24 hours after being brought to the attention of the employee. If an agreement is reached at such hearing, it shall be final and binding on all the parties.
>
> Section 4.    The arbitrator shall have no power to change, modify, add to or detract from any terms of the contract. In discharge cases the arbitrator shall have the power, but is not required, to order the discharged employee reinstated with back pay, less amounts received elsewhere, if he shall determine that the Company did not discharge such employee for proper cause.

(J.A. at 61–62, 67–68.) Furthermore, the relevant rules promulgated by Defendant state in pertinent part as follows:

> The purpose of these rules and regulations is to provide you with examples of unacceptable conduct which may warrant discipline. Forms of discipline

which the company may utilize include, but are not limited to, reprimand, suspension and termination. The Company may impose any form of discipline up to and including immediate discharge, that it deems to be appropriate. [An employee violates these rules when he engages in the following conduct.]

\* \* \* \* \* \*

6. By word or action discredit or bring reproach upon co-workers or others on the basis of their race, religion, national origin, disability or sex.

7. *Assault* or the use of profane, abusive or threatening language toward fellow employees or supervisory personnel.

(J.A. at 82 (emphasis added).)

Accordingly, based upon the express terms of the CBA and the rules incorporated therein, Arbitrator Goggin's finding that Elliott had "grabbed [Thomas] by the back of the neck" did not support his conclusion that Defendant did not have "just cause" to discipline Elliott, and the award therefore did not draw its essence from the CBA. *See Cement Divisions National Gypsum Co.*, 793 F.2d at 766. Clearly, pursuant to Article 5, Section 3, and Article 11, Section 3 of the CBA, Defendant has the right to terminate an employee for "just cause;" pursuant to Article 11, Section 3, Defendant has the right to promulgate and enforce rules and all employees shall be subject to those rules; under the rules, Defendant may impose any form of discipline up to and including immediate discharge for a violation thereof; and pursuant to Rules 6 and 7, an employee may not discredit or bring reproach upon a co-worker on the basis of, among other things, sex, nor may an employee assault or use profanity toward fellow employees. Furthermore, to bring "reproach" is commonly understood to mean to bring shame, disgrace, or blame;

and to "assault" someone is commonly understood to mean "a violent attack with physical means." WEBSTER's THIRD INTERNATIONAL DICTIONARY 130, 1927 (1993); *see Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987) (citing *Detroit Coil v. International Assoc. of Machinists & Aerospace Workers*, 594 F.2d 575, 579 (6th Cir.1979)) (finding that terms in a collective bargaining agreement are to be given their ordinary meaning in the absence of evidence indicating that the parties intended to deviate from that meaning).

Thus, for Arbitrator Goggin to have found that Elliott's act of "[coming] up behind Ms. Thomas . . . and grabb[ing] her by the back of the neck and start[ing] her toward the door," particularly while acknowledging that the two were arguing at the time, did not amount to a violation of the rules as incorporated into the CBA— i.e., Elliott's actions did not serve as "just cause" for his discharge—conflicts with the express terms of the CBA where these actions clearly amount to an assault. Therefore, the award did not derive its essence from the CBA on this point as a matter of law. *See Cement Divisions National Gypsum Co.*, 793 F.2d at 766.

I am not persuaded otherwise by the Union's argument that Defendant consistently characterized Elliott's actions as "workplace violence," thereby somehow rendering this term the standard by which the CBA is to be interpreted. I find the Union's argument to be nothing more than a red herring and a vain attempt to argue semantics where the issue is not the terminology used by Defendant in matters associated with this incident; but, rather, the express, unambiguous language of the rules as incorporated into the CBA and whether Elliott's actions rose to the level of a violation thereof.[1]

1. Notably, the record indicates that Elliott called Thomas a "bitch" as he escorted her from the building; that he told inquiring co-workers to "stay the hell out of it;" and that this evidence was presented to Arbitrator Goggin, yet Defendant failed to come forward with evidence to refute these verbal profanities. Therefore, pursuant to Defendant's rules, Elliott's use of profanity in this regard would also have served as "just cause" for his

Furthermore, Arbitrator Goggin's findings that "the incident did not last more than about a minute;" that "[n]o witness testified that he or she saw the grievant hit Ms. Thomas;" that "it would appear that [Elliott] was not trying to abuse Ms. Thomas;" and that "[t]here was no evidence in the record which indicated that [Elliott] had hurt Ms. Thomas," imposed additional requirements upon Defendant for disciplining an employee that are not in the CBA, and serves as another basis for finding that the award did not draw its essence from the CBA on this issue. *See Cement Divisions National Gypsum Co.*, 793 F.2d at 766. In other words, the rules do not provide that it must be found that an employee "hit," "abused," or "hurt" another employee before Defendant can impose discipline, nor do the rules impose a time limit as to how long the assault must last before discipline may be imposed. Rather, the rules state that Defendant may impose discipline—up to and including discharge—when an employee brings reproach upon a co-worker based upon the co-worker's sex, or assaults another employee. Accordingly, because Arbitrator Goggin imposed these additional criteria upon Defendant in determining whether Elliott's actions violated the CBA, the award did not derive its essence from the CBA as a matter of law.[2] *See id.*

**B. Whether the Award Drew its Essence from the CBA as a Matter of Law on the Issue of Whether Elliott's Procedural Due Process Rights were Violated?**

The district court also found that the award did not derive its essence from the CBA as a matter of law with respect to the denial of Elliott's predisciplinary hearing

inasmuch as Arbitrator Goggin imposed an additional obligation upon Defendant regarding this hearing that is not required by the CBA. Specifically, the district court found as follows:

> The Court reaches a similar conclusion with respect to the arbitrator's award as it relates to the Pre Discipline Hearing issue. In addressing that issue, the arbitrator determined that, "It is clear from the record in this case that the Company never 'officially' contacted an officer or Business Agent of the Union". Nevertheless, the arbitrator acknowledged "[t]he only evidence on the record with regard to this obligation was an 'informal' exchange in the Company lunchroom at some unspecified time". In addition, the arbitrator found that there was a discussion between [Defendant] personnel and the Union Recording Secretary that a bargaining unit employee was being disciplined. There is nothing in the CBA which references either "formal" or "informal" notice to the Union that [Defendant] intends to discipline a bargaining unit employee. Yet, the arbitrator created an obligation which did not exist in the CBA that any notice [Defendant] gave to the Union be some nondescriptive "formal" notice. The arbitrator's imposition of a "formal" notice requirement is without warrant in the CBA.

(J.A. at 37.) I agree with the district court that the award did not derive its essence from the CBA as a matter of law on this issue, but for different reasons. *See City Management Corp. v. United States Chemical Co., Inc.*, 43 F.3d 244, 251 (6th Cir.1994) (finding that this Court may affirm on any grounds supported by the record, even though they may be different

---

discharge. However, Arbitrator Goggin's award did not make mention of Elliott's use of these profanities, although the record indicates that the arbitrator had this evidence before him. Furthermore, the record indicates that Thomas was discharged for her actions in relation to this incident as well.

2. Because the award did not derive its essence from the CBA, the issues of whether the award violated public policy; whether the award of full back pay to Elliott was in violation of the express language of the CBA; and whether the award should be vacated because Arbitrator Goggin destroyed the tapes from the arbitration hearing are moot.

grounds than those relied upon by the district court).

Contrary to the district court's distinction, the issue here is not whether a "formal" or "informal" hearing is required under the CBA, particularly because Defendant does not contest that a predisciplinary hearing was not held. Rather, Defendant claims, as it did before Arbitrator Goggin, that the Union *waived* the hearing. Defendant supports its claim on appeal with the affidavit of Brett Thurman, Defendant's General Counsel and Human Resources Manager, inasmuch as Arbitrator Goggin could not comply with Defendant's subpoena duces tecum for the tape recordings from the arbitration hearing in this case. Thurman's affidavit states in relevant part as follows:

13. The issue of whether there was a predisciplinary hearing was not presented to the Arbitrator in that all of the parties conceded at the hearing that a predisciplinary hearing was *not* held.

14. At the hearing in this case, Chuck Friend (then a division manager with [Defendant]) and I, testified that we discussed predisplinary [sic] procedure regarding Elliott with John Burns ("Burns"), a Union representative.

15. Both Thurman and Friend testified that during these discussions, Burns expressly agreed to waive the predisciplinary hearing set forth in the CBA. There was no evidence that refuted or attempted to refute this testimony at the hearing.

16. In fact, the Union not only waived the hearing requirement, it also initially indicated it would not grieve Elliott's discharge, and admitted this to the Arbitrator. However, after Elliott filed a claim against the Union for failure to represent him with the National Labor Relations Board, the Union settled that claim by agreeing to grieve and arbitrate Elliott's termination.

(J.A. at 78–79.) The Union did not respond to Thurman's affidavit with any evidence to the contrary. Although the Union did submit an affidavit from John Burns, its Recording Secretary and Business Representative, as an exhibit attached to its motion for summary judgment, a review of the affidavit does not refute the contentions made by Thurman in his affidavit regarding waiver of the predisciplinary hearing. Furthermore, although the Union submitted a second affidavit from Burns which attempted to refute Thurman's affidavit on the issue of waiver, Burns' second affidavit was not submitted until *after* the district court issued its decision and order in this case when the Union submitted its motion to amend the judgment. Because it is well-settled that when reviewing a grant of summary judgment, this Court must confine its review to the evidence as submitted to the district court at the time, the Court may not consider Burns' March 9, 1998 affidavit—the affidavit submitted after the district court had ruled on the motions for summary judgment—when considering the district court's decision here. *See* Fed. R.App. P. 10(a); *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1181 (6th Cir.1993).

The Union makes an unsupported assertion that "Arbitrator Goggin found the alleged notice to the Union was insufficient to support a knowing waiver of the contractual obligation." However, the award does not expressly *or* implicitly make such a finding. The award simply found that a conversation which took place between Defendant and the Union Recording Secretary in Defendant's lunch room did not rise to the level of a "formal" hearing as required by the CBA. The award makes no mention that this exchange in the lunch room was insufficient to constitute a knowing *waiver* of the hearing.

Accordingly, because the Union failed to come forward with any evidence to create a genuine issue of fact that it did not agree to waive the hearing, as attested to by Thurman's affidavit, the district court properly granted Defendant's motion for summary judgment because the award is

without rational support and cannot be rationally derived from the terms of the CBA, where the express requirement the award found lacking—the predisciplinary hearing—was *waived* by the Union as a matter of law. *See Cement Divisions, National Gypsum Co.*, 793 F.2d at 766.

In summary, because I believe that the arbitration award did not draw its essence from the CBA on the issues of whether Defendant had just cause to terminate Elliott as well as whether Defendant violated Elliott's due process rights, I disagree with the majority's holding and would affirm the district court's order granting Defendant's summary judgment motion to vacate the arbitrator's award.

## II. The District Court's Order Denying The Union's Motion to Alter or Amend the Judgment Pursuant to Rule 59(e)

Apparently because the majority disagreed with the district court's decision to vacate the arbitrator's award, it did not reach the Union's claim that the district court abused its discretion in denying its motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). However, because I believe that the district court reached the right result in vacating the award, I will briefly address the Union's Rule 59(e) motion as follows.

It is well settled that this Court reviews a denial of a motion to alter or amend the judgment under Rule 59(e) for an abuse of discretion. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). In its motion to amend the judgment, the Union argued that the district court made an erroneous factual finding when it found that the award did not draw its essence from the contract, because the term "workplace violence," as used by Arbitrator Goggin, was simply in line with Defendant's use of the phrase. The Union also argued that the district court made a legal error in concluding that Elliott committed an "assault" upon Thomas because the court impermissibly substituted its judg-

ment of the facts for Arbitrator Goggin's judgment. In support of its motion, the Union submitted the affidavit of John Burns which basically provided his rendition of the events that occurred at the arbitration hearing.

In denying the Union's motion, the district court refused to consider Burns' affidavit because Burns had been available since the time that the incident occurred, he had provided a previous affidavit, and had participated in the arbitration hearing. As such, Burns' affidavit submitted with the Union's motion did not constitute "newly" discovered evidence of the type to be considered in a Rule 59(e) motion. In addition, the district court denied the motion on the basis that the Union essentially raised the same arguments as it raised in its motion for summary judgment.

Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice. *See Javetz v. Board of Control, Grand Valley State University*, 903 F.Supp. 1181, 1190 (W.D.Mich. 1995); *Keweenaw Bay Indian Community v. State of Michigan*, 152 F.R.D. 562, 563 (W.D.Mich.1992), *affirmed*, 11 F.3d 1341 (6th Cir.1993). In addition, "[i]t is well-established ... that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment." *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir.1989) (rejecting affidavits submitted with the movant's Rule 59 motion which could have been submitted prior to the court's ruling on the motion for summary judgment).

Here, I agree with the district court that the Union is simply seeking a second bite of the apple in bringing its motion to amend, where the Union makes the same

argument as it did at the summary judgment stage and fails to set forth any meritorious errors of law. The Union's claim that the district court erroneously substituted its judgment for that of the district court is simply an argument based upon semantics, and begs the question when considering that Arbitrator Goggin found that Elliott grabbed Thomas by the back of her neck, and yet failed to conclude that Elliott violated the CBA—i.e., his actions did not constitute just cause for discharge. Again, the award is to draw its essence from the plain language of the CBA, and that language clearly makes an "assault" just cause for discharge.

In addition, the district court properly exercised its discretion in refusing to consider Burns' affidavit submitted with the Union's motion, where Burns had consistently been involved with these proceedings and had submitted a previous affidavit, and yet Burns failed to come forward with statements made in the affidavit at hand until the Union filed its motion to amend. *See Emmons*, 874 F.2d at 358; *Javetz*, 903 F.Supp. at 1191–92 (finding that additional evidence should only be considered under a Rule 59(e) motion if, in the exercise of all diligence, it could not have been submitted before its current submission).

Based upon the foregoing, I dissent from the majority's decision to reverse the district court's order to vacate the arbitrator's award. Although it is true that the scope of our review of an arbitrator's award is limited, the award must nonetheless derive its essence from the CBA and I agree with the district court that the award failed to do so here.