**EATON CORPORATION, Engineered Fasteners Division, Plaintiff–Appellant,**

v.

**PAPER, ALLIED–INDUSTRIAL, CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, AFL–CIO, CLC, Local 5–334, Defendant–Appellee.**

No. 00–3111.

United States Court of Appeals, Sixth Circuit.

April 17, 2001.

Before KEITH, SILER, and CLAY, Circuit Judges.

PER CURIAM.

This is an appeal by an employer from a district court judgment affirming a labor arbitrator's award. For the reasons that follow, we AFFIRM the decision of the district court.

## I.

Plaintiff/appellant, Eaton Corporation, Engineered Fasteners Division ("Eaton"), filed this action against Paper, Allied Industrial, Chemical and Energy Workers International Union, AFL–CIO, CLC, Local 5–334 ("Union"). Eaton and the Union are parties to a collective bargaining agreement ("CBA") which governs the discipline and discharge of employees.[1] An appendix to the CBA established the following health and safety rule regarding the use of alcohol and illegal drugs on company premises:

> 2. Reporting to work while intoxicated, bringing intoxicants into the premises or indulging in intoxicants while on Company property is forbidden.

Eaton later adopted a substance abuse policy ("SAP") which addressed the "use of illegal substances on company premises."[2] This policy provides, in pertinent part, as follows:

> The unlawful manufacture, distribution, dispensation, purchase, possession, sale or use of illegal drugs or unauthorized controlled substances on [Eaton] premises, in Company owned, leased or rent-

---

1. The CBA was effective at all times relevant herein.

2. During the arbitration proceedings, the Union argued that the company "failed to bargain" for adoption of the SAP. The arbitrator found that "the Company was not under a duty to bargain with the Union over the Substance Abuse Policy" and that Eaton had properly implemented the SAP. The validity of the SAP was not contested by the Union before the district court and has not been raised in this appeal.

ed vehicles, or while engaged in [Eaton] business is prohibited.

The possession, use, distribution, purchase or sale of alcohol while on Company premises, or when providing services to the company, in Company owned, leased or rented vehicles is prohibited unless approved by management.

Employees who violate the above provisions will be subject to disciplinary action up to and including termination.

\*   \*   \*   \*   \*   \*

The providing of services to the Company by any individual at any time when the individual is, in the opinion of the Company, subject to the effects of any controlled substance is prohibited.

Unless prohibited by law, termination of employment will occur as a result of the following:

- refusal to submit to a drug and/or alcohol test
- failing to complete a substance abuse treatment program
- failing a management initiated drug test which includes, but is not limited to, reasonable suspicion, post-incident, and return-to-duty testing.

Under this policy, employees who test positive for alcohol are suspended and given the opportunity to participate in rehabilitative treatment. These rules, regarding the use of legal and illegal substances, were implicated by the injury of Eaton employee John Doran in January of 1998.

At all times relevant herein, John Doran (hereinafter "grievant") was employed by Eaton as a press operator. On January 22, 1998, approximately fifteen minutes after the start of his shift, grievant reported to Eaton's health care personnel for treatment of a laceration on his right hand. This injury prompted Eaton to administer both a Breathalyzer test and a urine drug screen.[3] These tests immediately revealed that grievant had a blood alcohol level of .18% as well as a positive test yield for cannabinoids (marijuana). In accordance with these preliminary test results, Eaton determined that grievant was "subject to the effects" of alcohol and controlled substances while "providing services to [Eaton]" in violation of the SAP, consequently, Grievant was suspended pending the results of a second, independent drug screen. The second drug test confirmed the presence of controlled substances. Citing the positive test results for illegal substances, Eaton discharged grievant on January 26, 1998.

Soon thereafter, the Union filed a grievance contesting the discharge. Upon reaching an impasse, the parties submitted the matter to an arbitrator for determination. The CBA provides that the arbitrator has "full discretion to make appropriate modifications of the penalty." Thus, the parties stipulated to an agreement limiting the arbitrator's review to whether Eaton had "just cause" to terminate the grievant.

In May of 1999, the arbitrator ordered grievant's reinstatement after concluding that the Eaton lacked "just cause" for his

---

3. The Occupational Safety and Health Administration ("OSHA") requires industrial employers "to maintain accurate records of ... work-related deaths, injuries and illnesses other than minor injuries requiring only first aid treatment and ... do not involve medical treatment." 29 U.S.C. § 657(c)(2). These records are conventionally termed "OSHA 200 Logs." The parties agree that an OSHA-200 Log is the "deciding factor in post-incident" drug testing and, consequently, the propriety of the testing has not been contested. The Court notes, however, that the SAP and the CBA fail to reference this OSHA provision as a basis for testing. More noticeably, the SAP and CBA completely neglected to define the term "incident."

termination. The arbitrator found, based upon the Eaton's rules and the testimony presented, that "employees are not subject to discipline for off-duty and off-premises conduct." Moreover, the arbitrator found that while testing the blood alcohol concentration of an employee will determine whether the employee is intoxicated at work, urinalysis "reaches far back in time, probing for possible drug use during periods when the employee was off duty." The arbitrator reasoned that the nexus between marijuana urinalysis and on-the-job impairment was untenable and, consequently, could not be the basis for discharge. In rendering his decision, the arbitrator found that the portion of the SAP that distinguished "between [the] abuse of alcohol and abuse of other chemicals [was] unreasonable and therefore void."

Eaton brought suit in the district court, seeking to have the arbitrator's decision vacated. On December 17, 1999, the district court issued a memorandum opinion and order granting summary judgment to the Union and affirming the decision of the arbitrator. This appeal ensued.

## II.

Eaton presents two issues in this appeal.[4] First, Eaton alleges that the arbitrator "exceeded his authority" in finding that the grievant's discharge lacked "just cause." Specifically, Eaton argues that the SAP unambiguously requires termination for a positive drug test and, consequently, "the arbitrator was without authority to choose a remedy other than

discharge." Second, Eaton contends that inasmuch as the award attempts to equalize treatment for the abuse of alcohol and drugs, it "fails to draw its essence" from the CBA. We reject these arguments.

### A.

We review a grant of summary judgment in labor arbitration cases *de novo*. See *Monroe Auto Equip. Co. v. Int'l. Union*, 981 F.2d 261, 265 (6th Cir.1992). Nevertheless, our review of an arbitration decision is extremely limited. *Id.* "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of the lower courts." *United Paperworkers Int'l. Union v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). "In fact, [a court's] review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." *Tennessee Valley Authority v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 514–515 (6th Cir.1999).

Given the strong federal policy in favor of enforcing arbitration agreements, a court must enforce an arbitrator's award as long as it "draws its essence from the collective bargaining agreement." *Misco*, 484 U.S. at 36, 108 S.Ct. 364 (quoting *United Steelworkers v. Enterprise Wheel*

4. Eaton originally presented an additional issue on appeal: whether the arbitrator's award violated the "well-defined" public policy against reinstating a current drug user. After the period for filing briefs with this Court had expired but prior to oral arguments, the Supreme Court issued an opinion affirmatively deciding the public policy issue. In *Eastern Associated Coal Corp. v. United*

*Mine Workers of Am., Dist. 17, et al.*, 531 U.S. 57, 121 S.Ct. 462, 469, 148 L.Ed.2d 354 (2000), the Court unanimously held that considerations of public policy did not preclude the enforcement of an arbitration award reinstating an employee who had tested positive for marijuana. Based upon this ruling, Eaton conceded and withdrew the public policy argument from this Court's consideration.

*& Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). The highly deferential standard of review set forth in *Misco* is most commonly extended to the substantive issue of what constitutes sufficient and reasonable cause for discharge. *See Interstate Brands v. Chauffeurs, Teamsters Local Union No. 135,* 909 F.2d 885, 889 (6th Cir.1990).

### B.

With deference to the very limited standard of review available in the instant case, we turn to the first issue presented in the instant matter—whether the arbitrator exceeded his authority.

Eaton argues that the SAP expressly provides that failing a post-incident drug test will result in termination of employment. Thus, inasmuch as the SAP provides only for termination in the event of a failed drug test, the "[a]rbitrator was without authority to choose a[nother] remedy." At the core of this argument is Eaton's belief that once the arbitrator found that grievant's adulterated drug test violated the SAP, the arbitrator was required to defer to the remedy provided under the SAP. This result is contrary to the findings of the arbitrator, the district court and the law of this Circuit.

Section 14 of the CBA allows Eaton to discipline its employees for "just cause," while § 10(b)(3) of the CBA empowers the arbitrator to make determinations in "cases of alleged improper disciplinary layoff or discharge, with full discretion to make appropriate modifications of the penalty." The arbitrator found that these provisions, notwithstanding the absolute termination provision of the SAP, subjected the SAP and any penalty imposed thereunder to a review for "reasonableness

... inconsistency ... discrimination, arbitrariness or malice." Relying upon this Court's holding in *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890 (6th Cir.1989), the district court affirmed the arbitrator's determination.

■ In *Eberhard* we held that "it is the language of the CBA and the arbitrator's own construction thereof, which determines the scope of the arbitrator's authority." *Id.* at 892. Having bargained "to have disputes settled by an arbitrator chosen by them," Eaton is bound by the "arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco,* 484 U.S. at 37–38. Moreover, an arbitrator's authority to interpret a "just cause" provision is not negated by work rules or employer policies which mandate discharge for certain offenses. *See General Truck Drivers v. Dayton Newspapers, Inc.,* 190 F.3d 434, 438–39 (6th Cir.1999). Thus, we find that the arbitrator was authorized to review Eaton's actions for "just cause," even though a literal application of the SAP would have authorized Eaton to terminate grievant.

■ We turn now to Eaton's second argument. Eaton contends that the SAP does not distinguish between on-the-premises drug use and off-duty drug use and, therefore, argues that the arbitrator's award exceeds his authority. Eaton further contends that there is no reasonable basis for the arbitrator's attempt to equalize the treatment of substance and alcohol abusers. Eaton also asserts that the distinction between alcohol and illegal drugs has been judicially and congressionally recognized and, thus, the SAP is congruent with federal public policy.[5] Based upon

---

**5.** Specifically, Eaton proffers the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101–12213 and the Drug–Free Work-

place Act, 41 U.S.C. § 701, *et seq.* With respect to the ADA, Eaton argues that the ADA statutorily denies current drug users the pro-

these arguments, Eaton alleges that the arbitrator's decision fails to draw its essence from the CBA.

The arbitrator opined that alcohol testing indicates current intoxication and is, thus, highly relevant to the offender's ability to perform his duties. The arbitrator reasoned that urinalysis testing for illegal drugs, on the other hand, only establishes "past drug use, not that the employee was using or was impaired on the job." In this vein, the arbitrator found that "urinalysis fights the presumption that the Company's main concern is the employee's behavior and physical condition while at work." Moreover, the arbitrator found that rules promulgated to govern and protect the employment relationship should be enforced, while conversely, rules that have no bearing on employment should be disallowed. Consequently, the arbitrator concluded that the portions of the SAP which provided an opportunity for rehabilitation when an employee tests positive for the contemporaneous use of alcohol but required termination for the potentially remote use of other drugs, were "unreasonable and therefore void." With regard to Eaton's argument that the SAP was patterned from federal statutes, that arbitrator noted that the "function of government is law enforcement [while p]rivate employers do not share that" goal. The arbitrator further reasoned that "off-duty conduct, including many types of criminal behavior [are] beyond the reach of the employer's disciplinary powers."

This Circuit has long recognized that "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authori-

ty" not even a reviewing court's conviction that he has "committed ... serious error [will] suffice to overturn his decision." *General Truck Drivers v. Dayton Newspapers, Inc.,* 190 F.3d 434, 437 (6th Cir.1999)(quoting *Misco,* 484 U.S. at 38, 108 S.Ct. 364).

> "If an arbitration award draws its essence from the collective bargaining agreement ... we must uphold the award. An arbitrator's award fails to draw its essence from the agreement when:(1) it conflicts commonly with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement."

*Dayton Newspapers, Inc.,* 190 F.3d at 437 (citations omitted). We will address each of these enumerated factors in turn.

First, *Dayton Newspapers* requires that the arbitrator's award comply "commonly" with the agreement's express terms. *Id.* The express terms of the CBA empowered the arbitrator to ascertain whether there was "just cause" for an employee's termination and to modify any penalty, thus, there is no conflict between the award and the agreement. Similarly, we find that the arbitrator's award did not impose additional requirements. As previously noted, the arbitrator had the authority to interpret the contract and modify any penalty. Consequently, the proffered remedy was congruent with the CBA. Next, we turn to *Dayton Newspapers* requirement that the

---

tection of the Act while expressly extending its protections to alcoholics or those "currently abusing alcohol." Similarly, the Drug–Free Workplace Act requires federal contractors to take certain steps "to ensure a drug free work environment" but imposes no restrictions on

the use of alcohol in the workplace. However, as discussed earlier, arguments founded upon notions of public policy were resolved by the Supreme Court's holding in *Eastern Associated Coal Corp.,* 531 U.S. 57, 121 S.Ct. at 469.

award derive from the agreement. *Id.* The stated purpose of the SAP was to "maintain a workplace free from the influences of unauthorized substances." Thus, the arbitrator's finding that urinalysis testing was not tailored to meet that objective "derived" squarely from the terms of the agreement. Finally, we find that the arbitrator's decision did not require considerations of fairness or equity. As stated above, the purpose of the SAP was to prevent employees from performing their duties "under the influence of intoxicants." The arbitrator found that the urinalysis test could only establish the use of illegal drugs "sometime in the previous three to four weeks" and was, thus, an unreasonable method of determining whether an employee was subject to the effects of illegal substances "on-the-job." The arbitrator's determination of reasonableness was based entirely upon the tenuous connection between Eaton's stated purpose of achieving a "substance free workplace" and the use of urinalysis testing to regulate and maintain that purpose. Accordingly, because the arbitrator's award met each of the criteria established by *Dayton Newspapers*, we find that the award did draw its essence from the CBA. *Id.*

### III.

Therefore, as the district court's decision upholding the arbitration award is consistent with the directives of the Supreme Court and the law of this Circuit, the judgment of the Honorable James S. Gwin is hereby affirmed.